## Miller, Appellant, *v.* Preitz.

384

Argued April 26, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*L. Francis Murphy*, with him *Peter A. Glascott*, and *C. Howard Harry, Jr.*, for appellant.

*Arthur B. Walsh, Jr.*, with him *Walsh and Durben*, for appellee.

*Arthur M. Eastburn, Jr.*, with him *Eastburn and Gray*, for appellees.

OPINION BY MR. JUSTICE COHEN, June 24, 1966:

This is an appeal from judgments for defendants entered on their preliminary objections, in the nature of demurrers, to plaintiff-administrator's complaint.

The following, well pleaded, factual allegations must be taken as true for purposes of ruling on the

demurrers. On or about October 1, 1961, Gloria Sewell, an aunt and next door neighbor of the infant decedent, Earl Brian Coakley, purchased a vaporizer-humidifier from defendant Wallace Preitz, trading as Hartsville Pharmacy. The device had been manufactured by defendant Northern Electric Company and distributed by defendant Rexall Drug Company. On January 27, 1962, the device was being used at decedent's residence, in accordance with its ordinary purpose, to relieve congestion in decedent's nose. Suddenly it shot boiling water on decedent's body causing his death on January 30, 1962.

Decedent's administrator began an action of assumpsit, containing two counts, against all of the above named defendants for damages resulting from breaches of implied warranties of merchantability. The first count was brought under the "Wrongful Death" statute[1] and the second under the "Survival" statute.[2] All of the defendants filed preliminary objections, in the nature of demurrers, asserting that the implied warranties did not extend to decedent or, as often stated, that decedent was not in "privity of contract" with defendants as required to support an action of assumpsit based upon a breach of implied warranty. The lower court sustained the demurrers and entered judgments for the defendants.

Our determinations in this appeal are in the first instance restricted by the election of the administrator to frame this action in assumpsit.

On the basis of our decision in *DiBelardino v. Lemmon Pharmacal Co.*, 416 Pa. 580, 208 A. 2d 283 (1965), the lower court properly sustained preliminary objections to plaintiff's "Wrongful Death" count. In *Lem-*

---

[1] Acts of April 15, 1851, P. L. 669, §19, 12 P.S. §1601, and of April 26, 1855, P. L. 309, §1, as amended, 12 P.S. §1602.

[2] Act of April 18, 1949, P. L. 512, §§601, 603, 20 P.S. §§320.601, 320.603.

*mon Pharmacal* we held that the right of action provided by the "Wrongful Death" statute could be brought only in trespass and that, therefore, an action of assumpsit for breach of warranty was inappropriate. The holding was based upon the language of the "Wrongful Death" statute which provides that the actionable wrong is "death . . . occasioned by *unlawful violence or negligence. . . ."* (Emphasis supplied).

The obstacle to bringing a breach of warranty action under the "Wrongful Death" statute is not present under the "Survival" statute. As we said in *Pezzulli v. D'Ambrosia,* 344 Pa. 643, 647, 26 A. 2d 659, 661 (1942), the actions provided in these two statutes "are entirely dissimilar in nature. The [former] represents a cause of action unknown to the common law. . . . The [latter] is not a new cause of action at all, but merely continues in his personal representatives the right of action which accrued to the deceased. . . ." [3] If decedent would have been entitled to maintain an assumpsit action for what the Uniform Commercial Code calls "consequential damages"—"injury to person or property proximately resulting from any breach of warranty" [4]—then we see no reason why his personal representative could not do so on behalf of his estate under the "Survival" statute. Thus, while a breach of warranty action cannot be brought under the "Wrongful Death" statute it may be brought under the "Survival" statute. The issue remains, how-

---

[3] According to the "Survival" statute: "All causes of action or proceedings, real or personal, except actions for slander or libel, shall survive the death of the plaintiff . . .;" and "[a]n action or proceeding to enforce any right or liability which survives a decedent may be brought by . . . his personal representative alone or with other parties as though the decedent were alive." Act of April 18, 1949, P. L. 512, §§601, 603, 20 P.S. §§320.601, 320.603.

[4] Act of April 6, 1953, P. L. 3, §2-715, as amended, 12A P.S. §2-715.

ever, whether decedent's lack of "privity" to the warranties precludes the action.

With respect to this issue there are two main inquiries. The first is whether §2-318 of the Uniform Commercial Code obviates the requirement of "privity" with respect to the plaintiff.

Section 2-318 provides: "A seller's warranty whether express or implied extends to *any natural person who is in the family or household of his buyer* or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. . . ." (Emphasis supplied). Act of April 6, 1953, P. L. 3, §2-318, 12A P.S. §2-318. The comments to this section elaborate on its purpose and scope: "2. The purpose of this section is to give the buyer's family, household and guests the benefit of the same warranty which the buyer received in the contract of sale, thereby freeing any such beneficiaries from any technical rules as to 'privity.' It seeks to accomplish this purpose without any derogation of any right or remedy resting on negligence. It rests primarily upon the merchant-seller's warranty under this Article that the goods sold are merchantable and fit for the ordinary purposes for which such goods are used rather than the warranty of fitness for a particular purpose. Implicit in the section is that any beneficiary of a warranty may bring a direct action for breach of warranty against the seller whose warranty extends to him. "3. This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." Thus, if the decedent, "a natural person," was connected with the "buyer", his aunt, in

one or more of the ways set forth in §2-318 then his lack of "privity" is not a bar to a suit under the "Survival" statute by his representative against his aunt's immediate seller, Wallace Preitz, trading as Hartsville Pharmacy.

With respect to this inquiry appellant contends that the decedent, being a nephew of the "buyer," was in her "family," as that term is used in §2-318, and, therefore, within the benefit of defendant Hartsville Pharmacy's implied warranty. The lower court held and appellees urge that the word "family" was meant by the Legislature to be used interchangeably with the word "household" and that since the decedent, who lived next door to his aunt, was not a member of her "household" he could not be in her "family." In our opinion such a construction is erroneous. The word "family" appears in the phrase "any natural person who is in the family or household of his buyer or who is a guest in his home." Obviously, the clause "guest in his home" has significance different from and independent of the clause "person . . . in the . . . household." It would seem also that the clause "person . . . in the family" has significance different from and independent of the clause "person . . . in the . . . household" rather than being mere surplusage. The use of the conjunction "or" strengthens the natural conclusion that "family" and "household" have different meanings in this statute.

Our interpretations of the word "family" in *Shank Estate*, 399 Pa. 656, 161 A. 2d 47 (1960); *Way Estate*, 379 Pa. 421, 109 A. 2d 164 (1954), and *Beilstein v. Beilstein*, 194 Pa. 152, 45 Atl. 73 (1899), do not support the lower court's construction. Not only were the contexts in which the word was used in those cases very different from the present context but also the meanings ascribed to the word "family" in those cases

were not limited to the meaning of the word "household."

The statute provides no clear indication of the meaning to be given to the word "family," and we have found no case on the matter. In our opinion, considering the remedial nature of the provision and the natural connotations of the word, its meaning was not intended to be unduly restrictive. Accordingly, we hold that the word "family" as used in this statute includes the nephew of the purchaser. This interpretation of the word "family" is not too burdensome on the seller who makes the warranty because not only must the beneficiary be in the buyer's family but also it must be "reasonable to expect that such person may use, consume or be affected by the goods. . . ." Whether this member of the family was also within the latter clause is a factual and objective question and depends upon all the relevant circumstances, which may include such factors as the remoteness of the family relation, the geographical connection between the buyer and the member of his family, and the nature of the product.

Because decedent was in the buyer's "family", §2-318 supports his representative's action against defendant Preitz, notwithstanding decedent's lack of privity. Therefore, it was error to sustain said defendant's demurrer to plaintiff's second count. Of course, the pertinent factual matters must be proven before recovery may be had.

Section 2-318 designates those persons who may sue. The second inquiry, therefore, is whether there is any rule of case law permitting the persons designated in §2-318 to maintain an action of assumpsit against remote sellers. With respect to this inquiry a consideration of the case law is pertinent and it is necessary to determine whether defendants' lack of "privity" is a bar thereunder. Much has been written regarding the demise of the requirement of "privity of contract"

in implied warranty actions,[5] and, indeed, its demise is plainly evident in some jurisdictions. See, e.g., *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A. 2d 69 (1960). Cf. *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E. 2d 182 (1965). But it is plain from *Hochgertel v. Canada Dry Corporation*, 409 Pa. 610, 187 A. 2d 575 (1963), that the requirement still has great vitality in Pennsylvania. The following excerpts from *Hochgertel* are pertinent:

"The general rule in the United States is that the mere resale of a warranted article does not give a subpurchaser the right to sue the manufacturer in assumpsit, on the basis of breach of warranty, for damages incurred by him due to a defect in the quality of the goods. Pennsylvania decisions are in accord with this general proposition. The warranty is personal to the immediate or original buyer, and he alone may avail himself of the benefit thereof. This limitation is based on the rule of privity of contract. . . .

"However, nearly a third of the American jurisdictions, including Pennsylvania, have broken away from the rule of 'privity of contract' in cases involving food, beverages and like goods for human consumption, and have for various stated reasons permitted a *subpurchaser* to sue the manufacturer directly in assumpsit for breach of an implied warranty that the food was wholesome and fit to eat. . . .

"A close study of [the Pennsylvania food cases] will disclose that the courts did not therein outrightly reject the 'privity of contract' rule, but extended the obligation of the manufacturer to the subpurchaser in such instances upon the . . . demands of 'social justice'. . . .

---

[5] See Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099 (1960) ; Section 402A of the Restatement 2d, Torts, Tentative Draft No. 10, April 20, 1964, and comments thereto.

"In no case in Pennsylvania has recovery against the manufacturer for breach of an implied warranty been extended beyond *a purchaser* in the distributive chain. In fact, the inescapable conclusion from Loch v. Confair, 361 Pa. 158, 63 A. 2d 24 (1949), is that no warranty will be implied in favor of one who is not in the category of a purchaser [except in cases covered by §2-318 of the Code]." We went on to hold in *Hochgertel* that a bartender-employee who was injured by an exploding bottle of soda water could not bring an implied warranty action against the defendant who had bottled and sold the soda water to plaintiff's employer.[6]

In light of the discussion and holding of *Hochgertel* it seems plain that under the developing case law decedent was not within the benefits of any implied warranties made by the remote sellers.[7] This necessarily follows from the fact that he was not a "purchaser." Even if he were a "purchaser" the product involved would not bring him within the rule that a "purchaser" can sue a *remote* seller only in cases involving "food, beverages, and like goods for human consumption."

*Yentzer v. Taylor Wine Company,* 414 Pa. 272, 199 A. 2d 463 (1964), another exploding bottle case, merely held that the plaintiff-employee was actually a "buyer" or "purchaser" and since the defective product was a food or beverage he could sue a remote seller on an implied warranty.

It must be emphasized that all we have said with regard to the requirement of "privity of contract" and

---

[6] We also held that the employee was not among those persons benefited by §2-318.

[7] In light of *Hochgertel* the suggestions in *Jarnot v. Ford Motor Co.,* 191 Pa. Superior Ct. 422, 156 A. 2d 568 (1959) ; *Mannsz v. MacWhyte Co.,* 155 F. 2d 445 (3d Cir. 1946), and *Thompson v. Reedman,* 199 F. Supp. 120 (E.D. Pa. 1961) that Pennsylvania has abandoned the privity requirements in all implied warranty cases must be disapproved.

the requirement of a family relationship applies only to actions of assumpsit for breach of implied warranty under the Uniform Commercial Code. The "privity" requirement has long been abandoned in Pennsylvania in actions of trespass for negligently caused injuries. See *Foley v. The Pittsburgh-Des Moines Co.*, 363 Pa. 1, 28-30, 68 A. 2d 517, 530-532 (1949). Furthermore, we recognize the social policy considerations behind imposing strict liability in tort upon all those who make or market any kind of defective product, notwithstanding an absence of negligence on their part.[8] A similar result would follow from abandoning the requirement of "privity of contract" in warranty actions.

However, the latter course, the one decedent's administrator has directed this Court upon, is not freely open to us. We are circumscribed by the limitations on strict liability in assumpsit set forth in the Uniform Commercial Code. The comment to the Code, quoted above, which is the basis for the argument that the language of §2-318 is precatory only was never enacted by the Pennsylvania Legislature. Such considerations, we believe, do not limit the development of the law in trespass. The concurring and dissenting opinion, which would remand or amend the pleadings in this action to trespass, fails to note that appellant has not sought such relief here. Indeed, the record discloses that an action of trespass has also been filed by the administrator. Therefore, an amendment by us would be improper. As a result, a determination of law as to strict liability for defective products in a trespass action must await an appropriate case.

Judgments for defendants Northern Electric and Rexall Drug affirmed and judgment for defendant

---

[8] This concept has now been embodied in the Restatement of Torts. Restatement 2d, Torts, §402A.

Theodore Preitz, trading as Hartsville Pharmacy, reversed with a procedendo.

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

It is conceded by everyone that under the well established existing law the plaintiff in this case cannot recover *for breach of an implied warranty* (1) unless he was a purchaser, or (2) the defective or damaging article was food or like goods for human consumption, or (3) he came within the provisions of §2-318 of the Uniform Commercial Code. It is crystal clear that plaintiff was not a purchaser nor was the article food or like goods for human consumption.

The law was recently accurately and pertinently stated in *Hochgertel v. Canada Dry Corporation,* 409 Pa. 610, 187 A. 2d 575.

Paragraph 1 of the syllabus well summarizes the facts and the decision in that case: "1. In this action of assumpsit for alleged breach of an implied warranty of fitness for the purposes intended, in which it appeared that the defendant sold a bottle of carbonated soda water to the plaintiff's employer and that while the plaintiff was on duty as a bartender in the employer's club house he was injured by flying glass fragments when the bottle exploded, it was *Held* that the seller's implied warranty to the purchaser that the contents of the bottle were fit for the purposes intended did not extend to the plaintiff as an employe of the purchaser."

The Court in its Opinion said (pages 613-616) : "It is clear from the language used [in §2-318 of the Uniform Commercial Code] that in order to qualify as a person (not a buyer), who is within the protection of the warranty, one must be a member of the buyer's family, his household or a guest in his home. An employee is definitely in none of these categories. For

the meaning of the words, 'family' and 'household' see, Way Estate, 379 Pa. 421, 109 A. 2d 164 (1954) and Shank Estate, 399 Pa. 656, 161 A. 2d 47 (1960).

. . .

". . . a study of pertinent Pennsylvania authorities [prior to the Code] is also necessary for the purposes of this decision.

"The general rule in the United States is that the mere resale of a warranted article does not give a sub-purchaser the right to sue the manufacturer in assumpsit, *on the basis of breach of warranty*, for damages incurred by him due to a defect in the quality of the goods. Pennsylvania decisions are in accord with this general proposition. The warranty is personal to the immediate or original buyer, and he alone may avail himself of the benefit thereof. This limitation is based on the rule of privity of contract. See, 1 Williston, Sales, §244, and 77 C.J.S., Sales, §305.

"However, nearly a third of the American jurisdictions, including Pennsylvania, have broken away from the rule of 'privity of contract' in cases involving food, beverages and like goods for human consumption, and have for various stated reasons permitted a subpurchaser to sue the manufacturer directly in assumpsit for breach of an implied warranty that the food was wholesome and fit to eat.

". . . Regardless of the rationale employed in these decisions, it is now established beyond argument in Pennsylvania that a subpurchaser may sue the manufacturer directly in food cases for breach of an implied warranty of fitness regardless of the lack of privity. Since the enactment of the Code, this right is extended to members of the subpurchaser's family, his household and guests in his home. . . .

". . . He is a complete stranger to any contractual transaction involved. His cause of action is *basically*

*one of tort* * and should stand or fall thereon. To grant such an extension of the warranty, as urged herein, would in effect render the manufacturer a guarantor of his product and impose liability in all such accident cases even if the utmost degree of care were exercised. This would lead to harsh and unjust results."

The language of §2-318 of the Code specifically extends a seller's warranty to any natural person (1) who is in the family of the buyer, or (2) in the household of the buyer, or (3) is a guest in the buyer's home. Situations will frequently arise where a person may be in two or in all three of the aforesaid classes and consequently sometimes there will be overlap. Moreover a very important proviso or condition is attached to each of said classes. This key condition prohibits recovery *by any of these persons,* unless it is reasonable to expect that the member of the family or a person in the buyer's household or a guest of the buyer may use such goods and be injured thereby.

It is indisputable that plaintiff was not a guest in the buyer's home and he was not a member of the buyer's household. It is also clear that the word "household" of the buyer undoubtedly refers to and includes persons who live, and servants who work,** in the buyer's home. A guest of the buyer means, as its name implies, a visitor who comes for a meal or a drink or a chat, or for a short visit. That brings us to the critical question: Was plaintiff's decedent "in the family of the buyer" and, if so, *was it reasonable to expect that he "may" use, consume or be affected by the goods?*

The word "family" is not defined in the Code and its interpretation must depend on the language and

---

* Italics throughout, ours.

** Cf, however, *Shank Estate*, 399 Pa. 656, 161 A. 2d 47, with which we are familiar.

context in which it appears in a particular statute or in a particular case. In many cases or situations the word "family" is flexible and difficult to define. Considering the language of this Code which extends a seller's *warranty* to any natural person who is in the family of the buyer and who, it is reasonable to expect, may use and be injured by the damaging and allegedly defective goods, we believe that in the context in which it is used this means not distant relatives, but the *close* family, including in-laws,* of the buyer.

In the instant case plaintiff's decedent, the 7 weeks old nephew who lived next door with his mother—who was the sister of the buyer of the allegedly defective article, viz., a vaporizer-humidifier—was not only a close relative of the buyer, but because he lived next door, *it was reasonable to expect that he might use such article,* and hence was included in the protection of the warranty. On the other hand, if the buyer lives and buys the goods in Philadelphia, and the son or nephew of the buyer lives in Chicago or Miami or San Francisco, he would not be covered by the Code if the explosion and injury occurred in one of those remote cities or in any other remote place.

With respect to the Dissenting and Concurring Opinion of Mr. Justice ROBERTS, it ignores the language of the Code, i.e., family, household, guest. Moreover, in cases based upon a warranty (express or implied) it would (1) abolish privity of contract, (2) overrule our prior decisions in this field, and (3) ex-

---

* We believe it is impossible to construe the word "family" as meaning all those who come under and are entitled to inherit under the Intestate Laws of the Commonwealth of Pennsylvania, since this would include the Commonwealth and all remote heirs even if they lived a great distance away. The language of the Code must have, we repeat, and must be given a reasonable and practical interpretation. Cf. *Way Estate*, 379 Pa. 421, 109 A. 2d 164; and *Beilstein v. Beilstein*, 194 Pa. 152, 45 A. 73.

tend, without proof of fault or negligence, and without any limitation, the right of any and every person to recover who is injured by any goods which are manufactured or sold by any and every seller. If such a radical change of the law is to be made, it should be made by the Legislature and not by the Courts.

I would affirm the judgment entered by the lower court for defendant Rexall Drug Company and for defendant Northern Electric Company but concur in the reversal by the majority of the judgment entered in favor of Preitz, trading as Hartsville Pharmacy, with a procedendo.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE JONES:

I concur in part and dissent in part from the views expressed in the majority opinion.

The factual background of this litigation is simple. On October 1, 1961, Gloria Sewell purchased from Wallace Preitz, a druggist, a vaporizer-humidifier which had been manufactured by Northern Electric Company and distributed by Rexall Drug Company. On January 27, 1962, Earl B. Coakley, the purchaser's minor nephew and next door neighbor, became ill. The vaporizer-humidifier was being used for this child in accordance with its ordinary purpose of relieving nasal congestion when suddenly, the vaporizer-humidifier shot boiling water upon the child's body causing injuries which resulted in his death three days later.

The personal representative of the child's estate instituted an *assumpsit* action in the Court of Common Pleas of Bucks County [1] for damages for an alleged breach of warranty of merchantability against the seller, the wholesale distributor and the manufacturer of the product. The assumpsit complaint contained

---

[1] A trespass action was also instituted and is still pending.

two counts; one count under the "wrongful death" statute [2] and another count under the "survival" statute.[3]

Preliminary objections, in the nature of demurrers, were filed which averred, inter alia, that the deceased child lacked "privity of contract" with *any* of the defendants, the lack of which privity deprived the child or his representative of any right of action in assumpsit and, further, that an assumpsit action would not lie under the "wrongful death" and "survival" statutes. The court below entered judgments for the defendants from which this appeal was taken.

The court below, inter alia, sustained that portion of the preliminary objections which averred that an assumpsit action would not lie under the "wrongful death" statute but held that an assumpsit action would lie under the "survival" statute. With that portion of the majority opinion which sustains the action of the court below in this respect I am in accord.

The principal question raised upon this appeal presents this Court with a problem, long vexatious to the bench and bar in this and other jurisdictions, which, in my opinion, the majority opinion fails to solve in a satisfactory manner. This problem, highly important, which can and should be resolved once and for all, is the determination of *who* can sue and *who* can be sued in an assumpsit action based upon the breach of an implied warranty arising from the sale of an allegedly defective product. Must privity of contract, "vertical" and "horizontal",[4] between the party suing and the party sued be established?

---

[2] Acts of April 15, 1851, P. L. 669, §19, 12 P.S. §1601, and of April 26, 1855, P. L. 309, §1, as amended, 12 P.S. §1602.

[3] Acts of April 18, 1949, P. L. 512, §§601, 602, 20 P.S. §§320.601, 320.602.

[4] "Vertical privity exists where the actual purchaser proceeds against his remote vendor. His direction of suit is upward,

The present action, bottomed upon an alleged breach of an implied warranty of merchantability arising from the sale of this vaporizer-humidifier, furnishes a most appropriate vehicle for the solution of this problem. This action is on behalf of the estate of a person who did not *purchase* the alleged defective product and whose status, although the purchaser's nephew, was not that of a member of the *family* or the household or a house guest of the purchaser. In the posture in which this litigation is presented we assume that, by reason of the child's relationship to and the proximity of his home to that of the purchaser, the deceased child could reasonably have been expected to have used or be affected by the product.

Does the warranty of merchantability of fitness of a product, implied from its sale, extend to a person, occupying the status of the deceased child, so as to enable such person's personal representative to maintain an assumpsit action? Assuming the answer is in the affirmative and recognizing that the action is not only against the immediate seller but also the distributor and remote manufacturer of the product, is there such privity of contract present to permit maintenance of the action against the seller, distributor and the manufacturer? If the answers to both questions are in the negative, should it be necessary to establish any privity of contract whatsoever?

We have in our jurisprudence preserved the two forms of action, tort and assumpsit. In the field of product liability, resort for redress for injury arising from a defective product may be had either in tort or

---

through the series of sales which culminated in his purchase. Horizontal privity, on the other hand, begins with the user of the product and ends with the ultimate purchaser. The user's movement is across as he attempts to reach the legal position occupied by the purchaser.": "Products Liability: Employees and the Uniform Commercial Code", Swartzkopf, 68 Dick. L. Rev. 444, 446.

assumpsit. In *Loch v. Confair*, 361 Pa. 158, 63 A. 2d 24, we said "that a person who has effected the purchase of particular goods and sustains injury because of unfitness for an intended purpose may institute an action in assumpsit based upon a breach of implied warranty *or* an action in trespass based upon specific averments of negligence. In both instances, the elements of damage may be identical, viz., the damage naturally and proximately resulting from a breach of implied warranty or a breach of duty. [citing authorities]. An election of remedies in this regard has, however, never been held by this Court to authorize institution of a contract action based upon averments of negligence. Nor, conversely, has it authorized institution of a negligence action based upon averments of contract. Essential distinctions which exist have been recognized." (at p. 162).[5] Thus, while a person injured by a defective product has an election of remedies, however, each remedy has acquired distinct characteristics.

In the landmark case of *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050, Judge (later Justice) Cardozo eliminated the privity requirement in a tort action, stating: "We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law." (111 N.E. at p. 1053). In *MacPherson*, Judge Cardozo illustrated the frailty of the nexus in negligence law between the duty of care of the actor and the idea of contractual privity, and he placed the

---

[5] In the assumpsit action considered in *Loch*, supra, the Court held that, in the absence of a pleaded *sale* of the product, no warranty arose. See also: *Gardiner v. Phila. Gas Works*, 413 Pa. 415, 419, 197 A. 2d 612 and *Cunningham v. Joseph Horne Co.*, 406 Pa. 1, 176 A. 2d 648, on the distinction between the two forms of action.

402

test of responsibility on whether the actor could reasonably foresee that, in the absence of the actor's due care, a person in the plaintiff's position might suffer injury. In Pennsylvania, we have followed *MacPherson* and have eliminated any requirement of privity in *tort* actions for damages resulting from defective products. As Justice, later Chief Justice, MAXEY said in *Henderson v. National Drug Co.*, 343 Pa. 601, 611, 23 A. 2d 743 : "It is, of course, not necessary to plead a warranty in cases like this, for the action is based upon a breach of duty *imposed by law.*" Today, a manufacturer, a distributor or immediate seller may be held liable in a tort action based on negligence to a consumer or a third party notwithstanding the absence of any contractual privity.[6] Privity of contract is no longer a problem in the product liability field in a tort action based upon negligence in this jurisdiction. Proof of negligence in such action is still essential.

When we turn to an *assumpsit* action based upon the sale of a defective product, we are confronted with

---

[6] In *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A. 2d 573, holding that an elevator company, which undertook by contractual undertaking with an elevator owner to inspect its elevator at regular intervals, would be liable to third persons, regardless of any privity of contract, who might be injured by the failure of the elevator company to properly perform its contractual undertaking of inspection, we said: "However, a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby: [citing an authority]. It is not the contract per se which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract." (at p. 18). See also: *Court v. Pitt. & Lake Erie R. R.*, 410 Pa. 520, 190 A. 2d 139; *Prost v. Caldwell Store, Inc.*, 409 Pa. 421, 425, 187 A. 2d 273; *Topelski v. Universal So. Side Autos, Inc.*, 407 Pa. 339, 180 A. 2d 414; *Thomas v. Ribble*, 404 Pa. 296, 172 A. 2d 280; *Fisher v. Sheppard*, 366 Pa. 347, 77 A. 2d 417.

an entirely different situation. Our case law requires both "vertical" and "horizontal" privity. Viewed in such light, initially, in the case at bar, we must determine whether the deceased child's status was such as to enable his representative to maintain this action. I agree with the view in the majority opinion that so long as privity remains a requirement in assumpsit action, we must look to the Uniform Commercial Code [7] to determine to whom the implied warranties from the sale of a product extend. I disagree with the interpretation of §2-318 of the Code by the majority of this Court under which the deceased child would be embraced within the word "family". It is evident under the rationale of the majority in this respect that the determination of whether a particular person is within the "family" of the product purchaser is on an ad hoc basis; such a method of determination is unnecessary, impractical and unsound.

Section 2-314 of the Code, supra, provides that "unless excluded or modified [under §2-316 presently not pertinent], a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind" and sets forth six minimum requirements to constitute merchantability. Section 2-315, supra (12A P.S. §2-315), provides that where "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is [unless excluded or modified under §2-316 presently not pertinent] an implied warranty that the goods shall be fit for such purpose." Section 2-318 extends *both warranties* [8] beyond

---

[7] Act of April 6, 1953, P. L. 3, §2-318, as amended by the Act of October 2, 1959, P. L. 1023, §2, 12A P.S. §2-318 (Supp. 1965).

[8] Warranty of fitness of purpose and warranty of merchantability. See: *Pritchard v. Ligget & Myers Tobacco Co.*, (CA 3)

the immediate purchaser of the product "to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of, the warranty." "Under this section, the class of protected persons are treated as 'third party beneficiaries' of the buyer's warranty and may enforce it against the seller as if they were the immediate purchasers." [9]

A *strict* interpretation of the statutory language of §2-318—which would view §2-318 as setting forth the extreme to which warranties would be extended—might well compel the conclusion that this deceased child does not fall within the *named* class of beneficiaries of the implied warranties. Twice we have construed §2-318: in *Hochgertel v. Canada Dry Corp.*, 409 Pa. 610, 187 A. 2d 575, where an employee of the purchaser of a bottle of carbonated soda sued the manufacturer in assumpsit, we denied recovery because "in no case in Pennsylvania has recovery against the manufacturer for breach of an implied warranty been extended beyond *a purchaser* in the distributive chain" (at p. 615) and, even though §2-318 provides an exception to the general rule, an employee of the purchaser "fits into none of the stipulated classifications" (at p. 615, n. 3) :[10] in *Yentzer v. Taylor Wine Co.*, 414 Pa. 272, 199 A. 2d 463, we allowed, under very similar facts, recovery to an employee who had actually purchased on

295 F. 2d 292, 296; *Frantz Equipment Co. v. The Leo Butler Co.*, 370 Pa. 459, 88 A. 2d 702.

[9] "The Virginia 'Anti-Privity' Statute: Strict Products Liability Under the Uniform Commercial Code", Speidel, 51 Va. L. Rev. 804, 815.

[10] See: 25 Pitt. L. Rev. 217, 365; 26 Pitt. L. Rev. 283, 395; 27 Pitt. L. Rev. 334, 353; 51 Va. L. Rev. 815. "[Hochgertel] appears to arrest the recent trend toward abrogation of the privity defense": 25 Pitt. L. Rev. 217.

behalf of his employer an allegedly defective wine bottle. The distinction drawn between *Yentzer* and *Hochgertel* was that in *Yentzer* the person suing was the purchaser of the product.

In my view, the majority opinion ignores the comment of the drafters of §2-318: "This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. *Beyond this*, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." (Emphasis supplied). Section 2-318 "does not uniformly codify, but rather incorporates the law of the enacting state on this matter." [11] In my view, §2-318 does not provide the ultimate extent to which the warranties may go; on the contrary, it permits the developing case-law in each jurisdiction to determine *how far* the extension of the warranties may go *or* whether *any* privity requirement should be retained.

Generally, in Pennsylvania the right to sue the manufacturer of a product in assumpsit on the basis of a breach of warranty for damages for injuries resulting from a defect in such product lies only in the immediate buyer of the product or in those persons specifically described in §2-318 and that, unless privity of contract, either factually or Codewise, be established no right of recovery exists: *Hochgertel*, supra, p. 614. To this rule are several exceptions: (a) in food products for human consumption (*Caskie v. Coca-Cola Bottling Co.*, 373 Pa. 614, 96 A. 2d 901; *Nock v. Coca Cola Bottling Works of Pittsburgh*, 102 Pa. Superior Ct. 515, 156 A. 537; *Bilk v. Abbotts Dairies, Inc.*, 147 Pa. Superior Ct. 39, 23 A. 2d 342; *Hochgertel*, supra) and (b) where

---

[11] "Commercial Code Litigation; Conflicts of Law, Sales", Del Duca, 65 Dick. L. Rev. 287, 307.

"the representation of quality or fitness for particular use was conveyed or intended to be conveyed by the manufacturer or original vendor to the dealer's customer (subpurchaser) by catalogue, manual, tags affixed to shipment, legend upon container, or by negotiation with the subpurchaser": *Silverman v. Samuel Mallinger Co.*, 375 Pa. 422, 428, 100 A. 2d 715.

However, there is case-law in our jurisdiction which seems contrary to the general rule. In *Conestoga Cigar Co. v. Finke*, 144 Pa. 159, 173, 22 A. 868, this Court, in an assumpsit action, permitted a recovery by the purchaser of certain tobacco against a remote tobacco "sampler" without any privity of contract save as might arise from a sample tag attached to the tobacco containers. In *Jarnot v. Ford Motor Co.*, 191 Pa. Superior Ct. 422, 156 A. 2d 568, the Superior Court said: "Moreover, a manufacturer who by means of advertising extols his product, in the effort to persuade the public to buy, may thereby incur liability to a purchaser notwithstanding privity between the purchaser and the manufacturer is wholly lacking. . . ." (191 Pa. Superior Ct. at pp. 429, 430) and that a "person, who after the purchase of a thing, has been damaged because of its unfitness for the intended purpose may bring an action in assumpsit against the manufacturer based on a breach of implied warranty of fitness; and proof of a contractual relationship or privity between the manufacturer and the purchaser is not necessary to impose liability for the damage." (191 Pa. Superior Ct. at p. 430). In *Mannsz v. MacWhyte Co.* (C.A. 3), 155 F. 2d 445 (purporting to apply Pennsylvania law), where a person had purchased a wire rope from a supply company to use to support a scaffold upon which such person was working and, the rope having broken, such person fell and was killed, the court recognized a right of action in the widow of the purchaser against not only the supplier but the manufacturer of the rope.

Despite the implications in *Conestoga,* the *direct ruling* in *Jarnot* and the *construction* of Pennsylvania law in *Mannsz,* the rule generally applied is that in an assumpsit action for damages arising from a breach of warranty in the product liability field both "horizontal" and "vertical" privity must be shown.

The instant litigation poses for us the question whether we shall continue to require the establishment of privity in an assumpsit action in this field. Thirty-five years ago in *Ultramares Corp. v. Touche,* 255 N.Y. 170, 180, 174 N.E. 441, 445, Judge (later Justice) CARDOZO prophetically said: "The assault upon the citadel of privity is proceeding in these days apace.":[12] Many of the leading scholars in the field[13] as well as courts in other jurisdictions [14] have with great logic and persuasion illustrated the unsoundness and illogic of retaining the concept of privity in the field of products liability. Dissatisfaction with the requirement of privity

---

[12] Prosser, "The Assault Upon the Citadel (Strict Liability to the Consumer)", 69 Yale L.J. 1099.

[13] Jaeger, "Privity of Warranty: Has the Tocsin Sounded?", 1 Duquesne L. Rev. 1; Keeton, "Products Liability,—Liability With Fault and The Requirement of a Defect", 41 Texas L. Rev. 855; Prosser, "The Assault Upon the Citadel (Strict Liability to the Consumer)", 69 Yale L.J. 1099; "Strict Products Liability and the Bystander", 64 Colum. L. Rev. 916; Jaeger, "Product Liability: The Constructive Warranty", 39 Notre Dame Law R. 501; Speidel, "The Virginia 'Anti-Privity' Statute: Strict Products Liability Under the Uniform Commercial Code", 51 Va. L. Rev. 804.

[14] *Spence v. Three Rivers Builders & Masonry Supply, Inc.,* 353 Mich. 120, 90 N.W. 2d 873 (1958); *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A. 2d 69 (1960); *Simpson v. Powered Products of Mich.,* 24 Conn. Supp. 409, 192 A. 2d 555 (1963); *Suvada v. White Motor Co.,* 51 Ill. App. 2d 318, 201 N.E. 2d 313 (1964); *Dagley v. Armstrong Rubber Co.,* (C.A. 7), 344 F. 2d 245 (1965); *Browne v. Fenestra, Inc.,* 375 Mich. 566, 134 N.W. 2d 730 (1965); *Goldberg v. Kollsman Instrument Corp.,* 12 N.Y. 2d 432, 191 N.E. 2d 81 (1963); *Lonzrick v. Republic Steel Corp.,* 1 Ohio App. 2d 374, 205 N.E. 2d 92 (1965); *Deveny v. Rheem Mfg. Co.,* 319 F. 2d 124 (C.A. 2) (1963).

"( . . . stems from the recognition that it is completely unrealistic . . . to limit a manufacturer's breach of warranty liability to his immediate vendee, who is most often himself a vendor who intends not to use, but merely to serve as a commercial conduit for, the product, or to limit a retailer's breach of warranty liability to his immediate vendee when . . . both the retailer and his vendee are well aware at the time of the sale of the product that others than the vendee will use or come in contact with it)": 75 A.L.R. 2d 45.

*If* we are to retain in assumpsit actions the requirement of privity, I perceive no sound reason why the right of recovery should be limited to the persons occupying the statutes designated in §2-318 of the Code. The framers of that section by their comment have invited its enlargement. If privity is so important to retain, then we should logically limit the right to recover in assumpsit, based upon implied warranty, to the parties who actually were participants in the sale of the product out of which the warranty impliedly arose and allow only the actual purchaser to sue the actual seller. However, §2-318 permits nonparticipants in the sale—family members, household members and houseguests of the purchaser—to sue the actual seller. Section 2-318 departs from the conception of privity as based upon contract since certainly none of the persons in the class were participants in the contract of sale: instead, §2-318 creates a fictitious privity of contract and then engrafts thereon such fictitious privity a concept of negligence, i.e., that the persons who occupy the specified statuses must be of a class which the seller of the product could reasonably foresee would use, consume or be affected by the product. While I believe that the retention of the concept of privity is unsound, at least, if we are to retain the requirement of privity,—actual or fictitious,—then I would eliminate any requirement that the suing party must occupy any spe-

cial status and would hold that the warranties extend to any person or persons whom the seller could have reasonably foreseen would use, consume or be affected by the product. In the case at bar, the deceased child would certainly then be included.

When we come to the question of *who* can be sued —only the actual seller or the seller, distributor and manufacturer—we have several alternatives: (a) retain what I believe to be the unrealistic concept of privity in assumpsit actions of this nature; (b) abolish the defense of lack of privity in such actions;[15] (c) relegate all actions in the products liability field to trespass, adopt §402A of the Restatement 2d, Torts, and eliminate "both privity of contract and negligence as essential conditions to recovery and establishes independent standards for the judicial imposition of strict products liability in tort."[16]

Section 402A (approved May, 1964) provides:

"402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the

---

[15] In Virginia, this result has been obtained by legislation: "When lack of privity no defense in action against manufacturer or seller of goods. Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods; . . .": Code, 1965, Vol. 2A, §8.2-318, p. 61. See: *Brockett v. Harrell Bros.*, 206 Va. 457, 143 S.E. 2d 897. See: *Speidel*, supra, 51 Va. L. Rev. p. 804 et seq.

[16] *Speidel*, supra.

business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The underlying purpose of §402A is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.[17] See *Escola v. Coca Cola Bottling Co.*, 24 Cal. 2d 453, 150 P. 2d 436 (1944) (TRAYNOR, J. concurring); *Vandermark v. Ford Motor Co.*, 37 Cal. Rptr. 896, 391 P. 2d 168 (1964); *Greenman v. Yuba Power Products, Inc.*, 27 Cal. Rptr. 697, 377 P. 2d 897 (1962). The courts of many jurisdictions have adopted §402A, supra. *Ford Motor Co. v. Lonon,*      Tenn.     , 398 S.W. 2d 240 (1966); *Garthwait v. Burgio,* 153 Conn. 284, 216 A. 2d 189 (1965); *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E. 2d 182 (1965); *Cintrone v. Hertz Truck Leasing and Rental Service*, 45 N.J. 434, 212 A. 2d 769 (1965); *Wights v. Staff Jennings, Inc.*, 241 Ore. 300, 405 P. 2d 624 (1965); Journal of American Trial Lawyers Association, Vol. 31, p. 248 et seq. and cases cited therein; Traynor, "The Ways and Meanings of Defective Products and Strict Liability", 32 Tenn. L. Rev. 363.

---

[17] 2 Harper and James, Torts, §§28.15-28.16, pp. 1569-1574; Prosser, "The Assault Upon the Citadel (Strict Liability to the Consumer)", 69 Yale L.J. 1099. In *Putman v. Erie City Mfg. Co.*, 338 F. 2d 911, 919 (C.A. 5) (1964) the court said: "Since 1958, almost every court that has considered the question has expanded the doctrine of strict liability to cover all defective products regardless of lack of proof of negligence." In *Putman*, a long list of such authorities is set forth.

In my opinion, the requirement of privity is illogical both when applied to the immediate purchaser or restricted to the immediate seller. A review of the case law in this and other jurisdictions reveals almost ludicrous attempts by the courts to fashion the concept of privity to individual cases. I would favor the abolition of the requirement of privity in assumpsit actions in this field. The remote manufacturer of a product shown to be defective should be held liable to any person or persons who might be reasonably foreseen to use, consume or be affected by the defective product.[18]

Moreover, I believe that in this class of case the preferable approach would be to adopt §402A, supra, apply the rule of absolute liability and confine assumpsit actions to those cases where the damages claimed are solely commercial in nature. Absolute liability is not novel in Pennsylvania: *Federoff v. Harrison Construction Co.*, 362 Pa. 181, 66 A. 2d 817; *Kopka v. Bell Telephone Co. of Pa.*, 371 Pa. 444, 91 A. 2d 232; *Waschak v. Moffat*, 379 Pa. 441, 109 A. 2d 310. Even the doctrine of res ipsa loquitor and exclusive control, which we restrictively recognize, are not a far cry from what would result from the adoption of §402A.

Basically, the adoption of §402A would be sound and practical. Those who make and market products which are to be used and consumed by the public must be held to a special responsibility to any member of the using or consuming public who may be injured by the use and consumption of the product. The public, with justification, expects that, in the case of products of which it has a need and for which it must rely upon those who make and market the product, such manufacturers and sellers, be they proximate or remote, will stand behind their products; the burden of injuries

---

[18] For an enlightening discussion of the benefits of this approach to those under §402A, see: *Speidel*, supra, pp. 838 et seq.

caused by defects in such products should fall upon those who make and market the products and the consuming public is entitled to the maximum of protection. Only through the imposition of liability under the provisions of §402A can this be accomplished.

The majority opinion holds: *First*—that, while an assumpsit action for breach of warranty will lie under the "survival" statute, supra, such action will not lie under the "wrongful death" statute, supra. With that holding I agree.. *Second*—§2-318 of the Uniform Commercial Code alone determines the status necessary to "horizontal privity" and that the deceased child under the instant factual situation was a member of the "family" of the product purchaser. With such a *restrictive* interpretation of §2-318 I disagree. Moreover, the *ad hoc* method employed by the majority to determine whether this deceased child was a member of the "family" of the purchaser is both unsound and unsatisfactory. I would find "horizontal" privity is not *commanded* by §2-318; even if it were, I would find this child's representative could sue because this child was a person whom the seller could reasonably have foreseen would use this product. *Third*—that, because the case law in this Commonwealth requires that, in nonfood cases, there must be *privity of contract* in assumpsit actions between those entitled to sue under §2-318 of the Uniform Commercial Code and those sued, the instant action against the "remote seller", i.e., the distributor and manufacturer of the product cannot be maintained. In my opinion the case law in this Commonwealth which requires such privity of contract should no longer be considered authoritative, the requirement of privity in assumpsit should be abolished and the instant action against the "remote sellers" should be permitted.

I believe that §402A, supra, furnishes the appropriate vehicle for the recovery of damages for injuries to

the person or property arising from defective products while actions for the recovery of damages for "economic loss" arising from defective products should be maintained under the Uniform Commercial Code.[19]

I would reverse with a procedendo the judgments entered in the court below in favor of all three defendants.

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I concur in the majority's action in reversing the judgment for defendant Preitz, the retail seller, on count two of plaintiff's complaint. However, for the reasons stated in my dissenting opinion in *DiBelardino v. Lemmon Pharmacal Co.*, 416 Pa. 580, 586, 208 A. 2d 283, 286 (1965), I am unable to agree with the majority's determination that an action for wrongful death is here precluded.[1]

Nor am I able to agree that the absence of privity of contract between plaintiff's decedent and the remaining defendants, Rexall and Northern Electric, insulates those defendants from responding directly to plaintiff,

---

[19] " 'Economic loss' is defined as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.": "Manufacturers' Liability To Remote Purchasers For 'Economic Loss' Damages—Tort or Contract": 114 U. Pa. L. Rev. 539, 541 (1966).

[1] See generally Note, Wrongful Death Action for Breach of Warranty, 39 Temp. L. Q. 352, 359 (1966), which characterizes the *DiBelardino* decision as "unfortunate." The writer, taking a position similar to that expressed in my dissent in *DiBelardino*, concludes that "those states not allowing recovery seem to be caught in a semantical web which prevents their reaching the heart of the problem. They overlook both the remedial nature of . . . [wrongful death statutes] and the purpose behind . . . [such enactments] as well as the tort origin and nature of a breach of warranty action. . . ." Id. at 360.

414

without regard to fault, for the injuries caused by the defective product which they placed into the stream of commerce. In my view, once the issue of plaintiff's right to claim the protection of strict liability has been settled, as it has by reason of §2-318 of the Uniform Commercial Code, Act of April 6, 1953, P. L. 3, §2-318, reenacted without change, October 2, 1959, §2, 12A P.S. §2-318 (Supp. 1965), there is no justification for permitting conceptual abstractions and procedural niceties to preclude a direct action against remote parties in the distributive chain.

I therefore dissent from those portions of the majority opinion which hold that an action for wrongful death may not be brought in assumpsit and that the issue of whether this Court will hold remote sellers and manufacturers absolutely liable for injuries inflicted by defective products must await an "appropriate case." In my judgment, the Court is presently confronted with just such a case.

It must be emphasized that the action against Rexall and Northern Electric is not one which arises out of a purely commercial dispute; recovery is not sought for loss of bargain, economic loss or property damage.[2] Here we are presented with an action seeking redress for personal injuries sustained as a result of the malfunction of a product which, by any stand-

---

[2] I see no present need to offer a view as to the proper resolution of actions based upon economic loss. Compare *Seely v. White Motor Co.*, 63 Cal. 2d 9, 403 P. 2d 145 (1965), with *Santor v. A. & M. Karagheusian, Inc.*, 44 N.J. 52, 207 A. 2d 305 (1965). " 'Economic loss' is defined as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Note, Manufacturers' Liability to Remote Purchasers for "Economic Loss"—Damages—Tort or Contract, 114 U. Pa. L. Rev. 539, 541 (1966).

By the same token, since we are not here presented with a claim for property damage, I see no need to express an opinion respecting such actions at this time.

ard, should have been known to be dangerous if defective. Moreover, the decedent was a member of a class of persons which the seller and manufacturer should reasonably have anticipated would use or be exposed to the product, so that injury to him, in the event of a defect, was within the foreseeable ambit of expectation. Thus, if the policy of strict liability for injuries caused by defective products has merit and is to be adopted, certainly the circumstances of this case call for its application. It should also be noted that §2-318 of the Uniform Commercial Code, by setting aside the requirement of privity as a predicate to the maintenance of plaintiff's action against the retail seller Preitz, has in part resolved the issue, since plaintiff may recover without regard to fault on the basis of a breach of the retailer's implied warranty that the defective product was fit for human use. Thus, the only issue which presently confronts this Court is whether, despite the Code's relaxation of the requirement of horizontal privity, we should insist on the presence of vertical privity before an action against other, more remote parties in the distributive chain may be permitted.

Since the majority appears to suggest that the adoption of strict liability, as provided in §402A of the Restatement 2d, Torts, would be desirable policy, I must assume that its determination that this case does not properly present the issue, and its application of the privity doctrine to bar a direct action against Rexall and Northern Electric, stems from a desire to maintain doctrinal purity and to compel adherence to strict forms of pleading. In my view, the majority's concern with form, while possibly justified under certain circumstances, is not appropriate in the instant case and merely delays action on the part of this Court which is long overdue.

416

Over 500 years ago it was recognized that sellers of products for human consumption owed a special responsibility to purchasers of their products, a responsibility which extended beyond the mere avoidance of negligence. See Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1103-04 (1960). Many courts, including those of this Commonwealth, characterized this special responsibility as being in the nature of an implied warranty that such products would be fit for human consumption, the breach of which rendered the seller absolutely liable. See *McNaughton v. Joy*, 1 W.N.C. 470 (1875). At first this implied warranty was viewed as running merely from the seller to the immediate buyer and the ultimate consumer, if he were not the actual purchaser, was barred by lack of privity from recovering on the basis of this "special" or absolute liability for injuries sustained as a result of the consumption of adulterated or poisoned food.

Courts soon recognized the injustice inherent in such a limitation, however, and developed numerous theories which extended the scope of strict liability and permitted the ultimate consumer to recover, without regard to fault, for injuries caused by defective food products. See Gillam, Products Liability in a Nutshell, 37 Ore. L. Rev. 119, 153-55 (1958). Today, most jurisdictions, including Pennsylvania, afford protection in the nature of strict liability to consumers in food cases without reference to the doctrine of privity, a doctrine which has been discarded in such cases as circumscribing too narrowly the circle of those persons who should be permitted to obtain redress for injuries sustained without regard to fault. See *Caskie v. Coca-Cola Bottling Co.*, 373 Pa. 614, 96 A. 2d 901 (1953); *Catani v. Swift & Co.*, 251 Pa. 52, 95 Atl. 931 (1915); *Bilk v. Abbotts Dairies, Inc.*, 147 Pa. Superior Ct. 39, 23 A. 2d 342 (1941); *Nock v. Coca Cola Bottling Works*, 102 Pa. Superior Ct. 515, 156 Atl. 537 (1931).

Despite this development in the food cases, and the concomitant recognition that the scope of a seller's strict liability for injuries sustained as the result of the consumption of contaminated or adulterated food should not be restricted by reference to contractual relationships, and despite the relaxation of the privity requirement contained in §2-318 of the Uniform Commercial Code—and the admonition of the draftsmen of the Code that §2-318 was not intended to inhibit case law development of the scope of strict liability through the relaxation of the privity requirement—this Court has refused to apply this reasoning to non-food cases.[3] This refusal continues today in the face of the present case, which demonstrates that the danger to the public from defective articles intended for human use is frequently as great as the danger from contaminated or adulterated food intended for human consumption.[4]

---

[3] As a result, adherence to the dictates of privity in two recent cases made the right of an injured party to recover for an injury sustained from a defective product turn upon the completely irrelevant fact of who purchased the product. In *Hochgertel v. Canada Dry Corp.*, 409 Pa. 610, 187 A. 2d 575 (1963), the Court held that a bartender who was injured by an explosion of an unopened bottle of carbonated water sold by defendant to the plaintiff's employer was not entitled to bring an action based upon breach of implied warranty. The Court found that he was not a member of the class of persons included within §2-318 of the Code and that the absence of privity precluded a common law action based upon implied warranty. However, in *Yentzer v. Taylor Wine Co.*, 414 Pa. 272, 199 A. 2d 463 (1964), the Court permitted a hotel employee who was injured by a cork exploding from a bottle of champagne to recover on implied warranty. The action was allowed on the sole ground that plaintiff had executed the purchase on behalf of his employer.

[4] Other jurisdictions have been willing to recognize that strict liability, although first imposed in cases involving unwholesome food products, should logically be extended to other products which, when defective, create a like hazard to human life, health and safety. See, e.g., *Dagley v. Armstrong Rubber Co.*, 344 F. 2d 245 (7th Cir. 1965) (automobile tire); *Deveny v. Rheem Mfg.*

418

Moreover, it continues in the face of a case in which plaintiff's right to claim the protection of strict liability has already been settled by §2-318 of the Uniform Commercial Code and the only issue which is presented is whether he may proceed directly against the remote seller and manufacturer or is to be restricted to an action against the immediate seller Preitz. Thus, the majority's insistence on privity in order for plaintiff to proceed against Rexall or Northern Electric does not insulate those defendants from liability, since each may be required to indemnify its immediate purchaser in the event that Preitz, the retail seller, is held liable in the instant suit. All that is really accomplished by

*Co.*, 319 F. 2d 124 (2d Cir. 1963) (water heater); *Brown v. Chapman*, 304 F. 2d 149 (9th Cir. 1962) (skirt); *Bowles v. Zimmer Mfg. Co.*, 277 F. 2d 868 (7th Cir. 1960) (surgical pin); *B. F. Goodrich Co. v. Hammond*, 269 F. 2d 501 (10th Cir. 1959) (automobile tire); *McQuaide v. Bridgeport Brass Co.*, 190 F. Supp. 252 (D.C. Conn. 1960) (insect spray); *Hinton v. Republic Aviation Corp.*, 180 F. Supp. 31 (S.D. N.Y. 1959) (airplane); *Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 377 P. 2d 897 (1963) (power tool); *Simpson v. Powered Products of Mich., Inc.*, 24 Conn. Sup. 409, 192 A. 2d 555 (C.P. 1963) (power golf cart); *McBurnette v. Playground Equip. Corp.*, 137 So. 2d 563 (Fla. 1962) (playground equipment); *Continental Copper & Steel Industries v. E. C. "Red" Cornelius, Inc.*, 104 So. 2d 40 (Fla. App. 1958) (electric cable); *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E. 2d 182 (1965) (tractor unit); *Graham v. Bottenfield's, Inc.*, 176 Kan. 68, 269 P. 2d 413 (1954) (hair dye); *Browne v. Fenestra, Inc.*, 375 Mich. 566, 134 N.W. 2d 730 (1965) (garage door); *Spence v. Three Rivers Builders & Masonry Supply, Inc.*, 353 Mich. 120, 90 N.W. 2d 873 (1958) (cinder blocks); *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A. 2d 69 (1960) (automobile); *Goldberg v. Kollsman Instrument Corp.*, 12 N.Y. 2d 432, 191 N.E. 2d 81 (1963) (airplane); *Lonzrick v. Republic Steel Corp.*, 1 Ohio App. 2d 374, 205 N.E. 2d 92 (1965) (steel bar joists); *Markovich v. McKesson and Robbins, Inc.*, 106 Ohio App. 265, 149 N.E. 2d 181 (1958) (home permanent); *General Motors Corp. v. Dodson*, 47 Tenn. App. 438, 338 S.W. 2d 655 (1960) (automobile); cf. *Beck v. Spindler*, 99 N.W. 2d 670 (Minn. 1959).

the restriction which the majority imposes is to expose plaintiff to the risk that the retail seller may not be financially able to make redress and to deprive him of the opportunity of proceeding directly against the more financially able parties in the distributive chain. The danger that the plaintiff may be restricted to an action against a judgment proof defendant and the needless and bothersome circuity of actions which insistence on privity engenders counsel strongly against the position taken by the majority.

In my view, the arguments for extending the full protection of strict liability to consumers in non-food cases, widely accepted by other jurisdictions,[5] as well as by legal commentators,[6] are compelling, just as those same arguments were compelling in food cases. The public interest in affording the maximum protection possible under the law to human life, health and safety;[7] the inability of the consumer to protect himself;[8] the seller's implied assurance of the safety of a product

---

[5] See note 4, supra.

[6] See, e.g., Jaeger, Privity of Warranty: Has the Tocsin Sounded?, 1 Duquesne L. Rev. 1 (1963); Jaeger, How Strict is the Manufacturer's Liability? Recent Developments, 48 Marq. L. Rev. 293 (1964-65); Keeton, Products Liability—Liability Without Fault and the Requirement of a Defect, 41 Texas L. Rev. 855 (1963); Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099 (1960); Speidel, The Virginia "Anti-Privity" Statute: Strict Products Liability Under the Uniform Commercial Code, 51 Va. L. Rev. 804 (1965); Traynor, The Ways and Meanings of Defective Products and Strict Liability, 32 Tenn. L. Rev. 363 (1965); Wade, Strict Tort Liability of Manufacturers, 19 Sw. L.J. 5 (1965); Note, Strict Products Liability and the Bystander, 64 Colum. L. Rev. 916 (1964); and articles cited in *Putnam v. Erie City Mfg. Co.*, 338 F. 2d 911, 920 n.20 (5th Cir. 1964).

[7] See, e.g., *Wiedeman v. Keller*, 171 Ill. 93, 49 N.E. 210 (1897); Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1122-23 (1960).

[8] See, e.g., *Jacob E. Decker & Sons, Inc. v. Capps*, 139 Tex. 609, 164 S.W. 2d 828 (1942).

on the open market;[9] the superior ability of the manufacturer or seller to distribute the risk of loss;[10] the needless circuity of recovery and the expensive, time' consuming, wasteful and often unjust process which insistence upon privity frequently occasions [11]—all support the extension of the protection of strict liability beyond the food cases to those involving other consumer goods as well.

Since the so-called warranty action originated in tort,[12] it seems particularly appropriate that the re-

---

[9] See, e.g., *State Farm Mut. Auto Ins. Co. v. Anderson-Weber, Inc.*, 252 Iowa 1289, 110 N.W. 2d 449 (1961) ; *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A. 2d 69 (1960) ; *Lang v. General Motors Corp.*, 136 N.W. 2d 805 (N.D. 1965).

[10] See, e.g., *Escola v. Coca Cola Bottling Co.*, 24 Cal. 2d 453, 461, 150 P. 2d 436, 440-41 (1944) (Traynor, J., concurring).

[11] The possibility of enforcing strict liability "by resort to a series of actions, in which the retailer is first held liable on a warranty to his purchaser, and indemnity on a warranty is then sought successively from other suppliers" presently exists, but "what is needed is a blanket rule which makes any supplier in the chain liable directly to the ultimate user, and so short-circuits the whole unwieldy process." Prosser, *The Assault Upon the Citadel* (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1123-24 (1960). Prosser goes on to note that such a rule would be "in the interest, not only of the consumer, but of the courts, and even on occasion of the suppliers themselves." Ibid.

[12] As early as 1944, Justice (now Chief Justice) TRAYNOR, arguing persuasively in a concurring opinion in *Escola v. Coca Cola Bottling Co.*, 24 Cal. 2d 453, 461, 150 P. 2d 436, 440 (1944), called for the recognition "that a manufacturer incurs an absolute liability when an article that he has placed on the market, knowing that it is to be used without inspection, proves to have a defect that causes injury to human beings." He observed that "warranties are not necessarily rights arising under a contract. An action on a warranty 'was, in its origin, a pure action of tort,' and only late in the historical development of warranties was an action in assumpsit allowed. (Ames, The History of Assumpsit, 2 Harv. L. Rev. 1, 8 ; 4 Williston on Contracts (1936) §970.)" 24 Cal. 2d at 466, 150 P. 2d at 443.

quirement of privity,[13] as a limitation on the scope of a seller's or manufacturer's absolute liability, should be finally discarded in cases involving personal injuries. While the doctrine may have had some utility in the past, by limiting the liability of sellers and manufacturers, new and different considerations now dictate the expansion of the class of persons entitled to be redressed for injuries caused by defective products without regard to fault. Thus, whether the defendant should be strictly liable for injuries caused by a defective product is a question which cannot be determined by resort to doctrines of contract law, such as privity of contract, which developed in response to considerations for the most part not here relevant. The matter is solely one of policy and should be approached without the encumbrance that reference to contract law needlessly imposes.

I am of the view that the issue has been properly resolved by the formulation contained in §402A of the Restatement 2d, Torts, which provides:

"§402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused to the ultimate user or consumer . . . if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

---

[13] This, of course, includes both so-called horizontal privity which involves the question of who besides the purchaser should have a right of action against the manufacturer or seller of a defective product, and so-called vertical privity, which involves the question of who besides the immediate seller may be sued in an action to redress personal injuries caused by a defective product.

"(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." Restatement 2d, Torts, §402A (1965).

I believe that the time has arrived for this Court to settle the long perplexing problem of strict liability in cases involving defective products causing personal injuries by discarding privity as a predicate to the maintenance of such actions. See *Garthwait v. Burgio,* 153 Conn. 284, 216 A. 2d 189 (1965); *Suvada v. White Motor Co.,* 32 Ill. 2d 612, 210 N.E. 2d 182 (1965); *Ford Motor Co. v. Lonon,* 398 S.W. 2d 240 (Tenn. 1966); *O'Brien v. Comstock Foods, Inc.,* 125 Vt. 158, 212 A. 2d 69 (1965); *Delaney v. Towmotor Corp.,* 339 F. 2d 4 (2d Cir. 1964); *Greeno v. Clark Equip. Co.,* 237 F. Supp. 427 (N.D. Ind. 1965); *Greenman v. Yuba Products, Inc.,* 59 Cal. 2d 57, 377 P. 2d 897 (1963); *Cintrone v. Hertz Truck Leasing and Rental Service,* 45 N.J. 434, 212 A. 2d 769 (1965); *Santor v. A. & M. Karagheusian, Inc.,* 44 N.J. 52, 207 A. 2d 305 (1965); *Goldberg v. Kollsman Instrument Corp.,* 12 N.Y. 2d 432, 191 N.E. 2d 81 (1963); *Lonzrick v. Republic Steel Corp.,* 1 Ohio App. 2d 374, 205 N.E. 2d 92 (1965); *Wights v. Staff Jennings, Inc.,* 241 Ore. 300, 405 P. 2d 624 (1965).[14] As a result of such an approach, the more objectionable barrier of "horizontal" privity would no longer deprive ultimate consumers of the protection afforded by the doctrine of strict liability. It should be noted, however, that although the major expansion of liability would occur as the result of dispensing with "horizontal" privity, such as is done in part by §2-318 of the Uniform Commercial Code, a certain degree of practical expansion would also occur where "vertical" privity, the issue here in dispute, is discarded as a

---

[14] See also cases cited in note 4, supra.

prerequisite to recovery, since those who would otherwise be unable to obtain redress from the immediate seller because of his inability to pay any judgment awarded, or because of the inability to obtain jurisdiction over such seller, would have the alternative remedy and additional protection of an action directly against the manufacturer or others in the distributive chain.

In the present case, therefore, I would hold that plaintiff, the personal representative of the deceased, may maintain this action against defendants Rexall, the distributor, and Northern Electric, the manufacturer. Certainly, once the issue of plaintiff's right to recover without the necessity of establishing negligence has been settled, as it has in this case by reason of §2-318 of the Uniform Commercial Code, I see no reason for introducing the complication of privity to insulate remote parties in the distributive chain from responding directly to the injured party. Nor do I see what is to be gained by remitting plaintiff to an action of trespass when the same result would obtain through the simple expedient of disregarding the lack of privity between the parties.

While it is clear that the matter could be handled by permitting suits such as the instant one to be brought in trespass, the majority elevates form over substance by insisting that it be brought only in trespass. I would permit plaintiff to bring suit in trespass on the basis of §402A of the Restatement 2d, Torts or in assumpsit on the basis of a breach of warranty.

There is nothing unusual or novel about such an approach. Section 2-318 of the Uniform Commercial Code, which contains an exception to the requirement of horizontal privity where suit is brought by a member of the family or guest of the actual purchaser, permits, at least with respect to the persons therein specified, recovery in assumpsit. The majority, however, would require that those cases not within §2-318 and

all cases in which vertical privity is to be dispensed with be brought only in trespass. There is no sound reason for treating the cases differently, especially in light of the comment of the draftsmen of the Code that §2-318 was not intended to inhibit the expansion of strict liability through the relaxation of the privity requirement.

Moreover, such an approach is consistent with that taken in the food cases where, although the true basis of recovery is the duty imposed by law to redress an injury caused by the defective nature of the product, we permit the action to be brought in assumpsit while ignoring any absence of privity of contract. Conceptual abstractions and niceties of pleading have not been permitted to obscure what is truly involved in those cases and they should likewise not be permitted to obscure the considerations which militate in favor of permitting the instant actions against Rexall and Northern Electric.

Finally, as the very least, I would permit plaintiff here to amend his complaint to one in trespass and permit an action on the basis of the rule embodied in §402A of the Restatement 2d, Torts.

Accordingly, I dissent from the action of the majority in affirming the judgment entered for defendant Preitz, on count one of plaintiff's complaint, and the judgments entered for defendants Rexall and Northern Electric.

Mr. Justice MUSMANNO joins in this opinion.