## Caskie *v.* Coca-Cola Bottling Company, Inc., Appellant.

Argued March 30, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Kim Darragh,* with him *George Y. Meyer,* for appellant.

*Anthony R. McGrath,* with him *Meyer Umansky,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, May 25, 1953:

The plaintiff in this case became sick soon after drinking some of the contents of a bottle of Coca-Cola, manufactured, bottled and sold by the defendant. He brought this action in assumpsit claiming that defendant breached its implied warranty that the Coca-Cola was fit for human consumption in that it contained hydrochloric acid which caused injury and damages to the plaintiff. A jury awarded plaintiff $6,500. This appeal is from the judgment entered in favor of the plaintiff following the lower court's dismissal of defendant's motion for new trial. A motion for judgment non obstante veredicto in the lower court was not pressed in the lower court or here.

Ralph Caskie, the plaintiff, was a police officer of the City of McKeesport. He testified that on June 29, 1948 he purchased a bottle of Coca-Cola from an enclosed dispensing machine in a police station as he was about to report on duty around 4 o'clock in the afternoon. After he had drunk about one-half of the bottle, he retched, and upon taking the bottle from his mouth noticed that it had a smell which he likened to that of brake fluid. Other police officers who were nearby testified that they noticed the unusual odor. Plaintiff testified that he went to the defendant's plant which was not far distant and before arriving there vomited five times; that he gave some of the contents of the bottle to a company employe who turned it over to the plant manager, and was directed to see a Dr. Hutchison whose office was across the street

from the defendant's plant. He saw Dr. Hutchison who gave him an emetic and two prescriptions. Plaintiff testified that the next morning he was passing blood from the mouth and rectum; that he visited the doctor again and was given another prescription; that he was then confined to his home for eleven days and thereafter "I didn't know when it [the blood] was coming on me. I would be patrolling my beat and automatically it came on . . . For seven months straight I had the same trouble.", referring to the bleeding of the rectum, and that this condition continued in less severe degree up to the time of trial of the case, in May of 1952; that prior to imbibing the Coca-Cola he had enjoyed good health.

Defendant admitted that the Coca-Cola, when plaintiff left it at the plant, did have an abnormal odor; that it received a little of the contents of the bottle but did not analyze it chemically. Defendant's witnesses explained the manner in which Coca-Cola was bottled at the plant; that hydrochloric acid was not used in any way in the bottling process at the time of the occurrence, although it had been used in the plant in the latter part of 1946 or early part of 1947 in connection with descaling the company's bottle washer; that it was kept in a different portion of the plant, segregated from the bottling process. The bottle with its remaining content was retained by the plaintiff and delivered on July 9, 1948 to a Dr. Schiller, a chemist and bacteriologist, who testified that his analysis revealed the presence of .6 of 1% of hydrochloric acid in the Coca-Cola and that a Coca-Cola containing that percentage of hydrochloric acid was not fit for human consumption. Over a period of about seven months plaintiff was occasionally attended by Dr. Hutchison. He then went to a Dr. Rosen who in turn referred him to Dr. Joseph Hersh. Dr. Hersh, called

by the plaintiff, testified that the plaintiff was sent to him by Dr. Rosen on March 22, 1950; that he had received from the plaintiff a history of the case to the effect that he had swallowed part of a tainted bottle of Coca-Cola on June 29, 1948, whereupon he became desperately ill; that he suffered severe vomiting and diarrhea for six months, first bloody diarrhea and then a mucous type; that he lost 23½ pounds in weight, which he had not regained; that he (the doctor) saw the patient four times, on each occasion giving him a "thorough examination". As a result of the history and examinations he expressed the opinion that the plaintiff suffered and continues to suffer an emotional upset as the result of his illness, "... a traumatic neurosis, a nervous disturbance due to injury.", and a bleeding type of internal hemorrhoids; that both conditions were due to the ingestion of the noxious contents of the Coca-Cola bottle. As to prognosis he said, "I feel if this patient underwent surgery for the hemorrhoids and had a prolonged rest [at least for two months], he would improve to a great extent.". Dr. Hutchison, called by the defendant, testified that the plaintiff was suffering from intestinal poisoning from June 29, 1948, the date of the occurrence, to July 8, 1948, and without stating an opinion as to the cause of the intestinal poisoning, gave as his opinion that the plaintiff's bleeding internal hemorrhoids could have no connection with the ingestion of the Coca-Cola. Defendant filed no exception to an able and comprehensive charge by the learned trial judge nor to the refusal of its two points for charge, one the general point that the verdict must be for the defendant and the other that the jury should not consider the testimony of Dr. Hersh because legally insufficient.

Appellant's first contention is that the verdict was against the weight of the evidence. It is not seriously

disputed that plaintiff drank from the bottle of Coca-Cola and that it was contaminated.[1] The evidence amply established these facts. Appellant's complaint is that the injuries complained of were not established by competent evidence to have resulted therefrom; more specifically (and appellant's contentions are so confined) that the opinions expressed by plaintiff's expert witness, Dr. Hersh, were incompetent and inadmissible in that (1) he did not *treat* the plaintiff, and (2) the opinions were based partly on reports from Dr. Rosen and the chemist, Dr. Schiller.

Appellant contends that the mere descriptive statements of a sick or injured person as to the symptoms and effects of his malady are not admissible unless made to a medical attendant for the purpose of medical treatment or advice because the admissibility of a plaintiff's history of the case is an exception to the hearsay rule, based on the likelihood that he will tell the truth when he is seeking treatment or advice in the hope of being cured. It is unnecessary to discuss the matter because we think it sufficiently appeared that the plaintiff did consult Dr. Hersh for treatment or advice and in such case unquestionably the plaintiff's statements to the doctor relating to his condition, symptoms and feelings were admissible. See *Boyle v. Philadelphia Rapid Transit Co.,* 286 Pa. 536, 134 A. 446. At the outset of Dr. Hersh's testimony, whose qualifications incidentally were not challenged by appellant, he was asked, "You have had occasion to *treat* Mr. Caskie over the few years?", and he answered, "Yes". The plaintiff made four calls upon Dr. Hersh

---

[1] This established a breach of the implied warranty of fitness and plaintiff did not have the burden of proving that the presence of the hydrochloric acid was due to some negligence or dereliction on the part of the defendant. See *Rozumailski v. Philadelphia Coca-Cola Bottling Co.,* 296 Pa. 114, 145 A. 700.

over a period of some two years. The first call was on March 22, 1950 and the last the day before the trial. The plaintiff testified that after each call upon the doctor he "was very much relieved". The jury could well have found that the visits to Dr. Hersh were not merely for examination but for treatment.

On direct examination Dr. Hersh, after stating that the plaintiff was referred to him by Dr. Rosen, was asked, "Will you tell us the history as given to you by the patient, your diagnosis and treatment, if any?". Counsel for defendant interposed no objection. Later in the course of the doctor's direct examination counsel for defendant asked the court whether he could ask the doctor if he had treated the patient. Counsel for defendant did not apprise the trial judge of the reason pressed in this Court or any other reason for interrupting the direct examination with his question and he did not object to the court's action in directing plaintiff's counsel to proceed. Assuming that inquiry as to whether the doctor treated as well as examined the plaintiff was relevant, it was a matter which counsel for defendant could have developed upon cross-examination. This he did not endeavor to do.

Dr. Hersh gave as his opinion that as the result of the ingestion of the Coca-Cola the plaintiff suffered an emotional upset or traumatic neurosis and that his opinion was based upon the history obtained from the patient and physical examination. The only objection made by counsel for defendant in this connection was that the language of plaintiff's complaint was not broad enough to cover traumatic neurosis or emotional upset, but the complaint averred that the "plaintiff also received a shock to his nervous system" and upon questioning by the court, the doctor testified that traumatic neurosis fell within the realm of shock to the nervous system. After giving this diag-

nosis as to plaintiff's mental condition, the doctor's questioning was directed toward the plaintiff's physical condition. After being questioned as to the percentage of hydrochloric acid in the normal stomach, the doctor was asked, "Now, are you able to tell us, the Court and jury, what happens when the normal amount of hydrochloric acid present in the stomach is increased by the consumption of a mixture of hydrochloric acid, such as the presence of hydrochloric acid in an ordinary bottle of Coca Cola?", and his answer was, "The amount of acid in his case was enough to double the normal amount, and when given at one time is enough to produce a severe reaction.". Counsel for defendant objected and asked that the answer be stricken out because the doctor was testifying "on the basis of something he received from someone else". The court then inquired of and was assured by counsel for plaintiff that Dr. Schiller, the chemist who had made a report to the doctor, would be called as a witness. Dr. Schiller was called upon the conclusion of Dr. Hersh's testimony and his testimony, which was not in any way impeached or controverted, justified the assumption contained in Dr. Hersh's answer. We do not think that the defendant was harmed by permitting the doctor's answer to stand; moreover, defendant's counsel took no exception to the judge's ruling.

Dr. Hersh testified in effect that the physical conditions of which plaintiff complained were the result of internal bleeding hemorrhoids which in turn were caused by gastroenteritis. Plaintiff testified he did not suffer from hemorrhoids prior to his drinking from the bottle of Coca-Cola. Counsel for defendant complains that the doctor's diagnosis that the patient had gastroenteritis was based in part on information received from Dr. Rosen. Dr. Hersh at one place in his testi-

mony said, "The diagnosis [gastroenteritis] was based on the patient's history, plus a verbal report from Dr. S. J. Rosen.". It does not appear what Dr. Rosen reported to Dr. Hersh. Whatever it was, we do not think it made Dr. Hersh's diagnosis inadmissible. When asked the meaning of gastroenteritis, he testified: "Gastro refers to the stomach, enteritis refers to the intestines. He suffered severe vomiting and diarrhea for six months. He claimed to have a bloody diarrhea, and since that time he has had a mucous type diarrhea.". It appeared elsewhere in the doctor's testimony that these ailments or conditions were given to the doctor by the patient himself and that the doctor's diagnosis of gastroenteritis was based on the history of the case as given to him "by the patient". The plaintiff related the same ailments and conditions to the jury.

Finally, in considering appellant's complaints in regard to the foregoing matters, it is to be pointed out that counsel for the defendant at the close of his cross-examination of the doctor, invited the very opinion which he now claims the doctor was not competent to give: "Q. Doctor, is it your opinion that the internal hemorrhoids that Mr. Caskie has resulted from drinking the Coca Cola? A. In my opinion, based on the history of this patient and on the subsequent physical examinations, I feel that the patient suffered a chemically irritated gastroenteritis, and the hemorrhoids were the result thereof.".

Since competent testimony of Dr. Hersh expressly connected the conditions complained of by plaintiff with the ingestion of the Coca-Cola, we cannot find the lower court guilty of an abuse of discretion in refusing to hold in this regard that the verdict was against the weight of the evidence.

Appellant's second contention is that he should have been allowed to cross-examine the plaintiff as to his

drinking habits and that evidence offered in defense to show plaintiff used alcoholic drinks to excess was improperly excluded. Defendant's counsel was permitted to ask the plaintiff whether he ever lost any time as the result of drinking alcohol to excess and whether he had been suspended for being drunk on duty in 1949. The plaintiff denied that he drank alcoholic liquors to excess and his answers to the above questions did not admit or establish the contrary. Plaintiff was then asked, "Were you under the influence of alcohol at the time you busted all the furniture in your house in 1950?". Plaintiffs counsel objected. Before the court ruled, the witness denied that he "busted" the furniture or that he was under the influence of alcohol at the time of the occurrence. Upon the court's inquiry counsel for defendant admitted that he had no evidence that the plaintiff was intoxicated on the occasion mentioned. The court struck out the question and advised the jury to disregard any implication that might be taken therefrom. Defendant's counsel then asked plaintiff whether he had ever had his driver's license suspended because of intoxication. Upon inquiry by the court, counsel for defendant advised that the alleged suspension occurred in 1943. The court sustained plaintiff's objection on the ground that the occurrence was too remote to be relevant, and then instructed defendant's counsel that he would not be permitted to paint the plaintiff as an alcoholic by inferences from questions asked; that if counsel for defendant had proof that plaintiff had been "a chronic alcoholic, or anything of the sort" that accounted for plaintiff's complaints rather than toxic effects produced by the drinking of the Coca-Cola, it would be a matter of defense. It is often difficult to determine the proper limit of cross-examination. Its range necessarily must be left largely to the discretion of the trial judge. That the trial judge here wisely exercised his discretion will hereafter be seen.

When the defendant opened its case, defendant's counsel made the following offer: "My offer is to prove by people that have known the plaintiff for a number of years that he has the general reputation and is known as an habitual, chronic and regular user of whiskey or alcohol and that he is known to drink to excess. Then I intend to couple that with the specific instances of after the Coca Cola occurrence and before the Coca Cola occurrence to create the question of whether or not the plaintiff was an habitual user of alcohol to excess, and that one who does that invariably develops a gastritis, and since we are dealing with the stomach complaint, it would be introduced also for that purpose.". The record then shows the following colloquy: "THE COURT: Are you going to couple that evidence as to chronic alcoholism with the ailments complained of by competent evidence of a physician as to the cause and effect? MR. DARRAGH: I intend to develop through a physician that one who habitually uses alcohol steadily for a great period of time invariably develops gastritis. THE COURT: What about bleeding at the rectum? It is the chief complaint in this case. MR. DARRAGH: Nothing on that. THE COURT: Is he going to explain the bleeding at the rectum on the basis of Hemorrhoids in connection with that? MR. DARRAGH: I don't understand. THE COURT: One of the chief complaints of the plaintiff is he has had rather constant bleeding from the rectum, and he introduced evidence to show that has been brought about by the noxious effects of hydrochloric acid in the system. Are you going to produce evidence in the form of the opinion of a physician that what he now complains about and has complained about with reference to rectal bleeding is due to excessive drinking? MR. DARRAGH: No. THE COURT: Then why should you be entitled to show anything about excessive drinking? MR. DARRAGH: For the reason the plaintiff has made it an issue on credibility.

THE COURT: How has he made it an issue on credibility? Only by questions of yours. You can't create a question of credibility by questions of your own that are not relevant to the issue in the case. MR. DARRAGH: I say they are relevant to the issue in the case. THE COURT: Don't you see, there was nothing said about alcoholism until you asked the question and it was denied by the plaintiff. That's all you have in the case so far. Now you say you have a right to offer evidence of the excessive use of alcohol to test the credibility of the plaintiff with reference to his denial. MR. DARRAGH: That is right. THE COURT: No. You are not permitted to do that. As I understand, you are not going to produce medical testimony and opinion that the use of alcohol has had anything to do with these complaints of this plaintiff. MR. DARRAGH: First, to answer your question directly—no. MR. McGRATH: I object to the offer. THE COURT: Objection sustained; exception noted to defendant.". From the foregoing it appears that defendant's counsel admitted that he was unable to link the excessive use of alcohol with plaintiff's complaints, and based his offer on the issue of credibility as to what was thus made an irrelevant collateral matter. It follows that the trial judge properly excluded defendant's offer of proof, and that his prior rulings at the time of the cross-examination of the plaintiff were justified since plaintiff did not testify on direct examination as to use or nonuse of alcoholic liquor and inquiry into such subject was not germane to the direct examination.

Appellant's remaining complaint is that the verdict was excessive under the credible evidence. Plaintiff had been a police officer in the City of McKeesport for 8 years preceding the trial. Prior to becoming such he had worked for a roofing company and for his father who was also in the roofing business. After joining the police force, the plaintiff testified that he continued to

work as a roofer for his father when off duty and thus additionally earned from $225 to $275 for 8 months of the year and from $40 to $50 during the other 4 months or total earnings of between $1,960 and $2,400 per year; that his weakened condition following the Coca-Cola incident prevented him from doing any roofing work, and that he also lost 67 or 68 days in his occupation as a policeman for which he received from $8 to $10 a day. As to his earnings as a roofer, there was some corroboration with respect thereto by plaintiff's wife and a fellow police officer who also worked with plaintiff for the latter's father when off duty. Appellant suggests that since plaintiff was able to resume his duties as a police officer, it is not credible that he was unable to work as a roofer. This does not necessarily follow. It is not at all impossible that plaintiff's weakened condition permitted him to work as a police officer, but not for the number of hours a day required to perform both occupations. In any event this was matter for the jury. Under plaintiff's proofs he could have suffered a loss of earnings as a roofer at the minimums given during the interval of nearly 4 years between the date of the Coca-Cola occurrence and the time of trial in the amount of something over $7,500. This would be in excess of the verdict of $6,500, with no consideration given to medical expenditures of $96.79, his loss of earnings an a police officer, or other compensable items such as pain, suffering and possible future loss of earnings. If, as the verdict indicates, the jury believed the plaintiff and the testimony and opinion of Dr. Hersh, it cannot be said that the verdict was excessive. We agree with the court below that it should not be disturbed.

Judgment affirmed.