287 A.2d 345.

LIZZIE YOUNG *et al. vs.* COCA-COLA BOTTLING COMPANY OF RHODE ISLAND.

FEBRUARY 11, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

460

ROBERTS, C. J. This civil action was brought to recover damages for injuries alleged to have been sustained as a result of consuming a portion of the contents of a bottle of Coca-Cola alleged to have been adulterated by the presence of a foreign substance. The complaint is in three counts, counts 1 and 2 charging the defendant with negligence and count 3 charging the defendant with a breach of an implied warranty of fitness for human consumption pursuant to the provisions of G. L. 1956, §§6A-2-315 and 6A-2-318,[1] the Uniform Commercial Code, so called.

The case was tried to a justice of the Superior Court sitting with a jury. At the close of plaintiffs' case, defendant's motion for a directed verdict was denied by the trial justice. The defendant thereupon went ahead and introduced evi-

---

[1]Section 6A-2-315 provides for implied warranties of fitness for particular purposes and, in pertinent part, specifically provides: "As to foodstuffs or drinks sold for human consumption in sealed containers. there is an implied warranty that the goods shall be reasonably fit for such purpose, and such warranty shall extend from the seller and the manufacturer or packer of such goods to the person or persons described in §6A-2-318 of this chapter."

dence on its own behalf. After both parties rested, defendant again moved for a directed verdict in favor of defendant specifically on counts 1 and 2, in which defendant was charged with negligence. This motion for a direction was also denied by the trial justice, and the case was submitted to the jury. The jury found for defendant on counts 1 and 2, specifically answering in the negative an interrogatory asking whether defendant had been negligent in the preparation and packaging of the Coca-Cola consumed by plaintiff. On the third count the jury returned a verdict for plaintiff, answering in the affirmative an interrogatory asking whether defendant had breached the implied warranty of fitness for human consumption. The jury awarded damages to plaintiff, Lizzie Young, in the amount of $3,500 and consequential damages to plaintiff, Eddie F. Young, in the amount of $500.

The plaintiffs have prosecuted no appeal to this court from the jury's verdicts on the negligence counts. However, defendant did move for a new trial with respect to the verdict returned by the jury on the count alleging a breach of the warranty of fitness for human consumption. The trial justice in the case of Lizzie Young denied defendant's motion for a new trial. However, he granted defendant's motion for a new trial in the case of Eddie F. Young unless he filed a remittitur of all of said verdict in excess of $125. The remittitur not having been filed as directed, defendant has been granted a new trial in the case of plaintiff, Eddie F. Young, on the question of damages only. The defendant is in this court prosecuting its appeal from the jury's verdict awarding damages to plaintiff, Lizzie Young, for breach of the implied warranty.

The record discloses that plaintiff, Lizzie Young, was employed as an attendant at the Rhode Island Medical Center, usually working on a night shift from 11 p.m. to 7 a.m. While so employed, she testified, it was her practice to con-

sume several bottles of Coca-Cola each night. Early on the morning of October 20, 1965, she went to a dispensing machine located outside of the ward in which she was employed and purchased therefrom a bottle of Coca-Cola, returning immediately to her duty station. She testified that upon returning she joined two other women and proceeded to drink some of the beverage contained in the Coca-Cola bottle. She testified that she knew immediately that the Coca-Cola "[d]efinitely didn't taste right." Testimony was also adduced through one of the women who was present that plaintiff said "the first drink tasted funny," and when they examined the bottle, they observed a "white thing" inside the bottom of the bottle, which they thought was ice.

A few minutes later plaintiff again drank two or three swallows of the beverage and then said: "[T]here is some kind of strong medication in this bottle." She testified that she then went to the kitchen, where she obtained and drank a large quantity of milk. At about 6 o'clock that morning she left the State Hospital and drove to St. Joseph's Hospital in Providence, bringing with her the bottle which contained the remains of the beverage she had been consuming.

On her way to the hospital, according to her testimony, she became quite ill while driving along Reservoir Avenue, stating, "I had to stop and vomit on Reservoir Avenue." When she arrived at the hospital, she was "in pain, and I was sweating" while waiting for Dr. Delfino to arrive. Later that morning Dr. Delfino examined her and directed that some blood specimens be taken, which was done. Thereafter, according to plaintiff, she was still quite sick but was told to take the bottle and its contents to the State Department of Health. This she did, she testified, but because she was too ill to drive, she went to the office of the Department of Health by taxicab.

She testified that it was about a week before she felt better. She attempted to return to work that night but was told by the supervisor that she was too sick to work and to go home. According to plaintiff, she was out of work for about two weeks and for all of the week following the incident she was nauseous. According to her testimony, she had never suffered from nausea or stomach pain prior to October of 1965. Doctor Delfino testified that he had performed a series of gastrointestinal examinations on plaintiff and found her condition to be normal except for some slight pressure on the "descending duodenum."

We will first consider defendant's contention that the trial justice erred in denying its motions for a directed verdict. The defendant first moved for a directed verdict at the close of plaintiffs' evidence, the motion from the generality of its terms apparently being intended to include within its scope the two counts on negligence and the count on breach of warranty. The motion was denied, and defendant then proceeded to introduce evidence in its own behalf. Under Super. R. Civ. P. 50 a defendant's motion for a directed verdict made at the close of the plaintiff's evidence remains discretionary with the trial judge. If the motion is denied, the defendant may introduce evidence on his own behalf but by doing so he waives his original motion and must again move for a directed verdict at the close of all of the evidence in order to obtain appellate review. 1 Kent, *R. I. Civ. Prac.* §50.1. Consequently, defendant's contention as it relates to the motion for direction made at the close of plaintiffs' evidence is not before us. *Dawson v. Rhode Island Auditorium, Inc.,* 104 R. I. 116, 242 A.2d 407 (1968); *Tringa v. Murphy,* 108 R. I. 430, 276 A.2d 462 (1971); Super. R. Civ. P. 50.

After both parties had rested, defendant again moved for a directed verdict specifically with respect to counts 1 and 2 of the complaint, each of which alleged negligence on

the part of defendant. It is clear from the transcript that count 3, alleging a breach of warranty, was not included in this motion. As we have already noted, the jury returned a verdict for defendant on the negligence counts, and consequently error in the denial thereof, if any there were, did not prejudice defendant. It is our conclusion, then, that defendant's contentions respecting the motions for direction bring nothing before this court for decision.

The defendant has also directed our attention to a series of requests for instructions to the jury which it contends were denied by the trial justice to its prejudice. At the outset we note that a number of these requests clearly had application to the jury's consideration of counts 1 and 2, alleging the negligence of defendant. Obviously, the jury's verdict finding defendant free of negligence has the effect of making the denial of these specific requests, even if erroneous, not prejudicial. It is true also that several of the requests were obviously covered by the trial justice in his charge, and it is well settled that it is not error for a trial justice to instruct on points of law in language other than that requested by a party. *Goldis* v. *Fairchild,* 103 R. I. 746, 241 A.2d 298 (1968).

The defendant, however, did request instruction that the defenses of contributory negligence or assumption of risk were available to bar plaintiff's recovery in an action for a breach of the statutory warranty. These requests, of course, were based on the evidence that plaintiff, after first consuming some of the beverage and finding that it tasted "funny," proceeded to take another drink from the bottle after having become aware of the abnormal taste of the contents thereof. The defendant's contention, as we understand it, is that the instructions given did not adequately inform the jury that the contributory negligence of plaintiff, if established, would be a bar to recovery for a breach of the warranty and also tended to lead the jury to conclude

that the statutory warranty imposed strict liability on defendant for a breach thereof. This confronts us with the question as to the nature of the liability imposed upon a defendant by the provisions of the statutory implied warranty set out in §6A-2-315 and whether, a breach thereof being shown, recovery would be barred by the plaintiff's contributory negligence. We think not. The contention of defendant persuades us that it misconceives the nature of the liability imposed upon it by the statutory warranty.

In the first place, neither *San Antonio* v. *Warwick Club Ginger Ale Co.*, 104 R. I. 700, 248 A.2d 778 (1968), nor *Richard* v. *H. P. Hood & Sons, Inc.*, 104 R. I. 267, 243 A.2d 910 (1968), supports defendant's view that plaintiff's contributory negligence bars recovery for breach of the statutory warranty. In neither case was the action based upon a breach of the warranty that the contents of the bottles were reasonably fit for human consumption. These actions were brought to recover for injuries sustained by the respective plaintiffs while opening beverage bottles in a manner that could be found to be abnormal.

Neither can we agree that *Barefield* v. *LaSalle Coca-Cola Bottling Co.*, 370 Mich. 1, 120 N.W.2d 786 (1963), supports defendant's contention that assumption of risk is available as a defense in an action for a breach of an implied warranty. There the Michigan court held proper an instruction that a plaintiff's continued use of a product after becoming aware of its potential danger was not action in reliance upon the implied warranty of fitness. What the court actually said was that the instruction that an action was not in reliance upon the implied warranty was not rendered ambiguous by the inclusion therein of the words "assumption of risk." In fact, the court said that such language concerning assumption of risk "may better have been avoided." In other words, the defense to which the court subscribed was not assumption of risk but action on the part of the plaintiff that was not undertaken in reliance upon the warranty.

We might say parenthetically that there has been considerable divergence of opinion as to whether contributory negligence and assumption of risk are available as defenses to liability for a breach of the implied warranty at common law. Some courts have sustained the availability of these defenses, while others have rejected it. Some courts dispose of the cases on the ground that the plaintiff did not act in reliance on the warranty. However, the text writers appear to consider the question one of terminology, taking the view that no recovery should be allowed for a breach of warranty where the harm was caused by a misuse of the product or where the use thereof was with knowledge of its potentially dangerous character. An exhaustive discuscussion of the law with respect to the availability of these defenses in warranty cases is to be found in an annotation in 4 A.L.R.3d 501 et seq.

However, we reiterate that we are here concerned with a statutory implied warranty and with the legislative intent underlying its enactment. One text writer has said: "The difficulty with stating a rule of law in the classical terms of the past is that the warranty is for practical purposes *a type of liability distinct unto itself*. It serves no practical purpose to attempt to fit warranty liability into the classification of negligence liability or absolute liability nor to attempt to discern whether warranty liability is now tortious or contractual." (italics ours) The text writer also noted, in referring to the defenses available in implied warranty cases: "The question is primarily one of public policy or social forces and there is nothing in the Code to control or affect the decision of the court as to where it wishes to draw the line of public policy." 1 Anderson, *Uniform Commercial Code,* §2-314:23 at 543 (2d ed. 1970).

In this state, however, the Legislature has declared the public policy and, to implement that declaration, has provided by statute for an implied warranty that food and

beverages sold in sealed containers shall be reasonably fit for human consumption. In other words, the Legislature has taken the view that where food products of this type are sold for human consumption and are unfit for that purpose, there is an utter failure of the purpose for which such food is sold, and the consequence of the consumption is so disastrous to human health and life that it has elected to impose a warranty of purity in favor of the ultimate consumer as a matter of public policy.

We consider the language in which this statutory warranty is couched as being significant of the legislative intent, that is, that it was intended to impose the rule of strict liability for a breach of the warranty of fitness for human consumption. It would serve no useful purpose to extend this opinion by reciting the reasons relied upon by the courts for imposing strict liability for a breach of such a warranty on those who package and process foods and beverages and sell them in sealed containers. These reasons have been repeatedly stated extensively and lucidly by other courts. *See Jacob E. Decker & Sons* v. *Capps,* 139 Tex. 609, 164 S.W.2d 828 (1942), and *Patargias* v. *Coca-Cola Bottling Co.,* 332 Ill.App. 117, 74 N.E.2d 162 (1947).

It is clear from the language that the warranty is that the product shall be reasonably fit for human consumption and not merely that the defendant, in the processing and packaging thereof, exercised reasonable care to avoid contamination. In other words, in actions brought for breach of the implied warranty under §6A-2-315, the plaintiff need not prove that the potentially dangerous condition of the food or beverage was a result of the negligence of the defendant in the processing or packaging thereof.

Such conclusion is consistent with the development of the imposition of strict liability in food and beverage cases. In Prosser, *Torts* §97 at 674-76 (3d ed. 1964), the text writer traces the development of the application of the rule of

strict liability in food and beverage cases. He notes that by 1964 the majority of the states had adopted the principle of strict liability although the methods by which it was achieved varied.

The courts had long been seeking to relieve the consumer of the burden of proving negligence in food and beverage cases arising out of the breach of the warranty. A number of courts talked in terms of a showing of contamination by the plaintiff making a prima facie case of the defendant's negligence and that the burden of rebutting such negligence was on the defendant. *Patargias* v. *Coca-Cola Bottling Co., supra.* Other courts seeking to unshackle plaintiffs from the burden of proving that the contamination was the result of the defendant's negligence held that the doctrine of *res ipsa loquitur* applied. *Crystal Coca-Cola Bottling Co.* v. *Cathey*, 83 Ariz. 163, 317 P.2d 1094 (1957).

Other courts have held that in such cases the plaintiff need only prove the contamination of the product and its causal connection with his injury and is not required to prove that the contamination of the product was the result of the defendant's negligence. In 1961, at about the time our Legislature amended §6A-2-315 by adding the specific warranty, the Michigan court in *Manzoni* v. *Detroit Coca-Cola Bottling Co.*, 363 Mich. 235, 241, 109 N.W.2d 918, 922 (1961), stated: "We are holding that in a suit upon a warranty theory it is not necessary to show negligence, but rather breach of the implied warranty that the food is wholesome and fit for human consumption * * *." *See also Griggs Canning Co.* v. *Josey*, 139 Tex. 623, 164 S.W.2d 835 (1942); *Vaccarezza* v. *Sanguinetti*, 71 Cal.App.2d 687, 163 P.2d 470 (1945); *Caskie* v. *Coca-Cola Bottling Co.*, 373 Pa. 614, 96 A.2d 901 (1953).

We hold, then, that in an action brought under the warranty set out in §6A-2-315 of the Uniform Commercial Code to establish the right to recover for a breach thereof, the

plaintiff need prove only that the food or beverage was pur-
chased in a sealed container and was so contaminated or
adulterated as to be unfit for human consumption and, of
course, that there was a causal relationship between
his consumption of the unfit product and his injury. Be-
cause we reach this conclusion, we hold that the defenses
ordinarily available in an action brought to recover for in-
juries resulting from the consumption of contaminated food
on the ground of the negligence of the processer or pack-
ager, such as contributory negligence or assumption of risk,
are not available in an action brought for a breach of the
statutory warranty set out in §6A-2-315.

While disclaiming any intention of engaging in an exer-
cise in semantics, we are of the opinion that to bar recovery
by a plaintiff in an action brought for a breach of the stat-
utory warranty, it would be necessary to show that the
plaintiff had consumed the product in complete disregard
of his knowledge of its unfitness for human use. Obviously,
the plaintiff, acting with such a disregard of the knowledge
of its unfitness for human consumption, cannot be held to
have been relying on the statutory warranty of fitness. See
*Barefield* v. *LaSalle Coca-Cola Bottling Co., supra.* In
other words, it is our opinion that the Legislature intended
to extend the protection of the statutory warranty to the
consumer until such time as he waived his right to rely
upon the warranty by continuing to consume the product,
knowing that it was unfit for human consumption. Ordi-
narily the question of whether a plaintiff in such an action
was actually in possession of knowledge that the product
was unfit for human consumption and potentially danger-
ous to a consumer and continued its consumption in disre-
gard of that knowledge is for the jury.

There may be, however, cases in which evidence that a
consumer, in partaking for the first time of a beverage sold
him in a sealed container, noted an unusual taste or odor

would be without sufficient probative force to warrant a jury in finding that the consumer had thereby acquired actual knowledge of the deleterious or dangerous condition of the product. In such circumstances it could clearly be held as a matter of law that, in engaging in further consumption of the product, he was acting in reliance upon the warranty.

Much of the food and drink sold in sealed containers for human consumption is the subject matter of high-intensity advertising campaigns. The entire thrust of this advertising is to establish a high degree of confidence in potential consumers as to the quality and purity of the product being advertised. It is common knowledge that the consumers of such food products in general do develop a high degree of confidence in the representations of the packers or producers as to the purity thereof. Ordinarily, when the initial sampling of such product discloses a taste or odor that is other than normal, the consumer's curiosity or incredulity tends to impel him to partake again of the product in order to verify or allay his suspicions as to the unfitness thereof for human consumption. We reiterate that in these circumstances it would be unreasonable to hold that a person whose suspicion of the fitness of the product for human consumption had been aroused by the initial sampling thereof, had thereby gained actual knowledge of the potential danger of the product and its unfitness for human consumption absent a further showing which might justify such a conclusion.

The evidence in this case is insufficient, in our opinion, to warrant a finding by a jury that plaintiff, after having taken the first drink of the beverage, was in possession of actual knowledge of the potentially dangerous contamination thereof. We, therefore, are constrained to conclude that, in partaking of the beverage the second time, plaintiff

was acting in reliance upon the warranty of its fitness for human consumption.

The defendant contends that it was prejudicial error on the part of the trial justice to permit plaintiff, Lizzie Young, to testify at trial that she had been out of work two weeks as a result of having consumed a portion of the beverage. The court also denied defendant's motion to strike. The defendant's contention is based on the fact that in her interrogatory plaintiff indicated that she was out of work from October 20 to October 25, 1965. In our opinion, if the court did abuse its discretion in permitting the witness to testify in contradiction of the answer given in her interrogatory, such error was not prejudicial.

Under our Super. R. Civ. P. 33(b), ordinarily a party will not be barred from introducing evidence contrary to the answer contained in an interrogatory although his credibility may be subjected to impeachment on the basis of such contradiction. 1 Kent, *R. I. Civ. Prac.* §33.11. However, as is pointed out by the text writer, the court does have discretion to limit proof in the light of answers to interrogatories, but it has been well said that this discretion should be exercised in the light of the purpose of the rules, that is, that judgment may be given on the facts as they actually exist. 2A Barron & Holtzoff, *Federal Practice and Procedure*, §778; *Smith* v. *DeFusco*, 107 R. I. 392, 267 A.2d 725 (1970). In the circumstances here it is our opinion that the variance between the answer stated in the interrogatory and the testimony given did not have the effect of prejudicing defendant, and, therefore, we conclude that the trial justice did not abuse his discretion in allowing plaintiff to so testify.

The defendant also contends that the trial justice erred in denying its motion for a new trial on the question of liability in the case of Lizzie Young and in rejecting defendant's contention that the award of damages in plaintiff

Lizzie Young's case was grossly excessive. We entertain no doubt that the trial justice discharged the duty incumbent upon him on a motion for a new trial with respect to liability. It is clear from his decision that he passed upon the weight of the evidence and the credibility of the witnesses in an exercise of his independent judgment and that he came to the conclusion, as did the jury, that plaintiff had sustained her burden of proving liability for breach of warranty.

The defendant has argued vigorously on this issue and has charged that the trial justice misconceived certain of the evidence adduced concerning the liability. We are in accord with the trial justice's conclusion that there was sufficient evidence here, despite some conflicting testimony, that plaintiff had purchased the bottle of Coca-Cola in a sealed bottle from a dispensing machine which was serviced by defendant, whether it was the property of defendant or of the Patients' Welfare Fund. There is further credible evidence, which the jury and the trial justice apparently both believed, that the beverage contained in the bottle was contaminated by the presence of some white substance and had a strong odor of camphor and that plaintiff became ill shortly after consuming a portion of the contents of the bottle.

In our opinion, this evidence is susceptible of a reasonable inference that the contamination occurred during the bottling process and, in our opinion, will sustain a verdict by a jury for plaintiff on that ground absent rebuttal thereof on the part of defendant. As in the case of the trial justice, we perceive nothing in the evidence concerning this issue that impeached the testimony upon which the inference would be supported.

In short, it is our conclusion that the trial justice in this case was of the opinion that the evidence here on the question of liability was such that reasonable men could reach

different conclusions therefrom and followed the basic rule in this jurisdiction that in such cases he should not substitute his judgment for that of the jury. We see no error in his denial of the motion for a new trial on the issue of liability in the case of Lizzie Young. *Peloso* v. *Imperatore*, 107 R. I. 47, 264 A.2d 901 (1970).

Neither do we believe that we would be justified in finding that the damages awarded here for the injuries and the pain and suffering undergone by plaintiff are grossly excessive. Obviously, most of the award here was intended to compensate plaintiff for her pain and suffering. We have long held that an award of damages is grossly excessive in this respect when there is a demonstrable disparity between the amount awarded and the pain and suffering shown to have been endured as a consequence of the injury sustained. *Fusaro* v. *Naccarato*, 103 R. I. 324, 237 A.2d 545 (1968).

We have never adopted any formula for the computation of damages to be awarded for pain and suffering and leave the establishment of the amount to be awarded for such damages for an exercise of the jury's discretion thereon. As we said in *Tilley* v. *Mather*, 84 R. I. 499, 502, 124 A.2d 872, 874 (1956): "It has been our policy to allow the jury substantial latitude in computing the amount to be awarded as damages for pain and suffering and to reduce the jury's verdicts in this respect only when it appears that they are grossly excessive." On the basis of the record here concerning the nature and duration of the plaintiff Lizzie Young's pain and suffering, we are unable to conclude that the amount awarded by the jury could reasonably be held to be grossly excessive.

In the case of Lizzie Young the judgment appealed from is affirmed; in the case of Eddie Young, no appeal having been taken by the plaintiff from the judgment granting the defendant a new trial unless a remittitur was filed, the

judgment is affirmed, and the case is remitted to the Superior Court for a new trial on the question of damages only.

*Raul L. Lovett,* for plaintiffs.

*Higgins & Slattery, John A. Baglini,* for defendant.