**Allen R. HOFFMAN et al.**

v.

**McLAUGHLIN CORPORATION et al.**

**No. 94–343–Appeal.**

Supreme Court of Rhode Island.

Dec. 18, 1997.

Richard P. McMahon and Marifrances K. McGinn, Providence, for Plaintiffs.

Daniel V. McKinnon and John B. Lawlor, Jr., for Defendants.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

McLaughlin Corporation and Walter F. McLaughlin (collectively McLaughlin) appeal from a Superior Court final judgment entered following the direction of a verdict in favor of Allen R. Hoffman (Allen) and his mother, Celia W. Hoffman (Celia) (collectively the Hoffmans). This appeal was previously argued before this Court on March 5, 1996, and the judgment of the Superior Court at that time was affirmed by an equally divided court.[1] Thereafter, on June 27, 1996, we granted the McLaughlin petition for reargument.

## I

### Facts and Case Travel

The Hoffmans for many years prior to 1986 had owned Manna–Hoffman Supply Co. (Manna–Hoffman) and W.E. Davis Co., a profitable automobile-replacement-parts business doing business throughout the State of Rhode Island. At one time beginning in 1940 Manna–Hoffman had been in the hardware as well as the automobile-parts business, but after acquiring the W.E. Davis Company in 1956, it concentrated its automobile-parts business in two W.E. Davis store outlets, one in the city of Providence and the other in Pawtucket. Those stores were operated under the W.E. Davis name, and Manna–Hoffman then essentially became a real estate holding company. About that time, the McLaughlin Corporation was emerging as a major competitor to W.E. Davis in the automobile-replacement-parts business, and when, in May 1986, Manna–Hoffman and W.E. Davis became available on the local real estate and business market for sale, McLaughlin became an interested as well as a prospective purchaser.

Negotiations between McLaughlin and the Hoffmans for the purchase and sale of the Hoffman real estate holdings and automobile-parts business began in May 1986. Those negotiations culminated in an asset-purchase agreement on July 23, 1986. Pursuant to that agreement, McLaughlin agreed to purchase and acquire the Manna–Hoffman real estate holdings and its W.E. Davis stores, inventory, tangible equipment, accounts receivable, customer lists, cash on hand, and good will. A sales closing followed on September 30, 1986. At that closing McLaughlin acquired real estate and buildings that the parties valued at $300,000, the W.E. Davis stores and inventories valued at $170,000, tangible equipment valued at $70,000, accounts receivable valued at $450,000, and cash on hand that totaled $200,000.

At the closing, McLaughlin and Allen also agreed to and executed a consultant's agreement between Allen and McLaughlin. McLaughlin agreed to engage Allen to manage its W.E. Davis stores and to serve as a McLaughlin consultant for a period of twelve years. In return for that managerial and consulting work, as well as a noncompetition and confidentiality agreement, Allen was to be paid $50,000 per year and required

> "at reasonable times and insofar as his own business ventures, his place of residence and physical condition may permit, [to] hold himself available to consult and advise with Company. If Consultant's [Hoffman] physical condition, other business ventures or place of residence shall prevent him from consulting and advising with Company at any given time, his compensation as herein provided shall nonetheless be paid. Further, Consultant's compensation shall be paid notwithstanding any physical or mental disability at any time during the term of this Agreement."

The consulting agreement also provided that for a period of fifteen years, three years of which would extend beyond the duration of the consulting arrangement, Allen would not compete with McLaughlin in any facet of the automobile-replacement-parts business within a thirty-mile radius of Providence or within any geographical area in which the company had substantial business interests, except as a sales representative for a manufacturer of auto parts. Allen also agreed not to solicit for hire any McLaughlin employees, not to interfere in any way with McLaughlin's relations with customers and vendors, and not to disclose any confidential information without

1. *Hoffman v. McLaughlin Corp.*, 675 A.2d 404 (R.I.1996).

McLaughlin's consent. The provisions of the agreement providing for noncompetition and confidentiality were to continue even if the consulting agreement was terminated prior to its expiration term date.

In May 1988, almost two years into the consultant-agreement term, McLaughlin indicated to Allen, through McLaughlin's attorney, that it was dissatisfied with Allen's performance as the manager of its W.E. Davis stores and as a consultant to McLaughlin. There followed a meeting between Allen and McLaughlin and their attorneys. At that meeting it became evident that McLaughlin was not satisfied that Allen was performing his managerial work in the fashion McLaughlin believed was required by the consulting agreement. McLaughlin voiced those concerns because the two W.E. Davis stores were experiencing substantial financial as well as customer losses. McLaughlin attributed the losses to Allen's deficient work performance. A second meeting in June 1988 between the parties followed. At that second meeting, McLaughlin expressed the same concern as had been discussed earlier, at the first meeting, namely, Allen's allegedly deficient performance resulting in the W.E. Davis losses.

Some five months later, on November 22, 1988, McLaughlin sent a letter to Allen's attorney, asserting therein that during the first year of the consulting agreement, commencing in late 1986, Allen had breached the terms of the consulting agreement. In that letter, McLaughlin also informed Allen that as a result of Allen's deficient work performance he was terminating the consultant's agreement and no further payments would be paid thereunder to Allen. In addition, McLaughlin also stopped its payments due to Manna–Hoffman under the September 30, 1986 sales agreements. Attempts by the parties thereafter to resolve their dispute failed.

On April 10, 1989, the Hoffmans filed a civil action against McLaughlin in the Providence County Superior Court. Allen sued for the breach of his consultant's agreement and for his damages resulting therefrom. Celia, Allen's mother, and Allen also sued for the legal fees Manna–Hoffman had incurred in recovering the installment purchase payments due from McLaughlin following its termination of the installment payments required to be paid pursuant to the September 1986 sales agreements.

McLaughlin answered the Hoffman complaints, denying liability to them and asserting as an affirmative defense that McLaughlin had provided adequate notice of Allen's consultant's agreement breach to Allen through both oral and written communications to him complaining of his nonconforming and deficient performance in managing the W.E. Davis stores. McLaughlin's position was that it had not waived any of Allen's alleged contract breaches. McLaughlin, in addition, filed a counterclaim against Allen for breach of the consulting agreement and for damages allegedly resulting from that breach.

The case was reached for trial in the Superior Court in January 1994. At that trial, during the presentation of the plaintiffs' cases, counsel for McLaughlin sought to examine Allen's allegedly deficient work performance during the first year of the consulting agreement as manager-consultant at the W.E. Davis stores. In sustaining an objection to that line of questioning, the trial justice informed defense counsel that he would not permit questions to be put to Allen concerning any alleged nonperformance by Allen under the consultant agreement prior to June 13, 1988, the time when written notice of deficient performance was first given to Allen by McLaughlin's attorney. The trial justice, in making that ruling, relied upon the termination-clause provision contained in the consultant's agreement.

The termination clause provided:

"This Agreement may be terminated by [the defendants] in the event of a material breach hereof by [Hoffman]. If [Hoffman] is deemed by [defendants] to have materially breached the Agreement, then [defendants] shall give written notice thereof to [Hoffman] stating the basis for such notice; and, if [Hoffman] has not cured the condition stated in such notice to the reasonable satisfaction of [defendants] within fifteen (15) days after the date of such notice this Agreement shall terminate at the end of

such time periods. This Agreement may be terminated at the end of such time periods. This Agreement may be terminated by [Hoffman] in the event of a breach hereof by [defendants] in the same manner and subject to the same notice as provided above in this subparagraph. Termination of the Agreement by either party shall be without prejudice to any other rights such party may have."

The trial justice further held and ruled that defense counsel's questioning of Allen's pre-June 1988 performance as a consultant for McLaughlin would violate not only the terms of the termination clause in the agreement but also the "parole evidence rule" and "Rule of Evidence 403."

As a result of the trial justice's ruling, defense counsel was prevented from questioning Allen concerning his work performance prior to June 1988. At the conclusion of the presentation of the plaintiffs' cases, McLaughlin's counsel, without McLaughlin resting, then moved for "judgment as a matter of law."[2] In that motion, defense counsel asserted that the consultant's agreement relied upon by Allen as the basis for his claim was in fact and law an illusory agreement from which no right of action could emanate. The trial justice, after reviewing pertinent case law, found the agreement not to be an illusory contract and denied McLaughlin's motion for a directed verdict. Defense counsel then informed the trial justice that he would proceed with the presentation of defense testimony and then proceeded to do so. During the presentation of the defendant McLaughlin's case, however, in both defending against the Hoffmans' primary claims and in support of McLaughlin's counterclaim, defense counsel was again precluded from inquiring into or presenting evidence that related to any alleged performance breach by Allen prior to June 1988 and during the first year of the consulting agreement. The trial justice, in explaining his ruling to defense counsel, stated,

"Yes, my ruling is that unless you can show that this provision of 2.3 was complied with during the first year of the contract, which is the one you wanted to go into, then I will not allow you to present evidence pertaining to that first year."

Defense counsel, in responding to the trial justice, conceded that no notice "under 2.3" had been given to Allen "or any of his agents during the first year" and added, "So, in effect, as I understand it, what the Court has just ruled—what's a nice word—eviscerates the defendant's counterclaim."

■ After a brief court recess and chambers conference, defense counsel then proceeded to place upon the record a lengthy offer of proof regarding what evidence would have been produced by McLaughlin concerning alleged breaches of the consulting agreement by Allen prior to June 1988. Defense counsel informed the trial justice that such evidence would be offered not only in defense to Allen's primary claims but also in support of McLaughlin's counterclaim. Counsel's offer of proof fell on unreceptive ears. All parties then rested their cases. Unfortunately defense counsel at that time neglected to renew McLaughlin's earlier motion for a directed verdict that had been denied by the trial justice. That failure precludes our consideration now of the trial justice's ruling on that motion. Super.R.Civ.P. 50; *Young v. Coca–Cola Bottling Co.*, 109 R.I. 458, 287 A.2d 345 (1972); *Tringa v. Murphy*, 108 R.I. 430, 276 A.2d 462, *reargument denied*, 108 R.I. 931 (1971); *Dawson v. Rhode Island Auditorium, Inc.*, 104 R.I. 116, 242 A.2d 407 (1968).

Plaintiffs' counsel next moved for entry of directed verdicts by the court on both Hoffman claims as well as for Hoffman on McLaughlin's counterclaim. The trial justice granted those plaintiffs' motions. The defendants, McLaughlin, thereafter duly filed their claims of appeal to this Court.

McLaughlin claims here on appeal that the trial justice erred in prohibiting the introduction of evidence concerning Allen's allegedly

---

**2.** At the time of counsel's motion in January 1994, there was no such motion recognized in our trial practice. In was not until September 5, 1995, that Rule 50 of the Superior Court Rules of Civil Procedure first permitted such a motion. Prior thereto such motions were referred to as "motions for a directed verdict."

deficient performance of the consulting-agreement during the first year of the agreement and prior to June 1988. They also persist in their contention that the consulting agreement is both illusory and nonenforceable. We do not address the illusory-contract contention because, as previously noted, it was waived by counsel's failure at the conclusion of the trial evidence to renew McLaughlin's motion for a directed verdict when all parties had rested their cases.

## II

### Excluded Evidence

We conclude that the trial justice erred in precluding the introduction of evidence by McLaughlin concerning Allen's allegedly deficient work-job performance during the first year of the consulting agreement and prior to June 30, 1988, and upon which Allen's primary action was founded. That evidence, as disclosed by McLaughlin's offer of proof, was both relevant to McLaughlin's defense against Allen's primary action as well as to McLaughlin's affirmative defense that Allen had breached the consulting agreement by not performing as required. In addition, that evidence was essential to McLaughlin's counterclaim for damages resulting from Allen's alleged breach. The trial justice erroneously failed to recognize that the issue of whether McLaughlin properly terminated the consulting agreement was an entirely separate and distinct issue from that of whether Allen had breached the consulting agreement by failing to perform as required. Regardless of whether McLaughlin properly terminated the consulting agreement, in accordance with the termination provision contained therein, McLaughlin was not thereby prohibited from proceeding on his counterclaim against Allen for damages resulting from Allen's alleged breach of the duties required of Allen under the consulting agreement. "The exercise of a reserved power of termination will usually have prospective operation only; it will discharge both parties from their contractual duty to perform promises that are still wholly executory, but will not discharge the duty to make reparation for breaches that have already occurred." A.L. Corbin, *Corbin on Contracts,* § 1266 at

66–67 (1962). In discussing *Carleno Coal Sales, Inc. v. Ramsay Coal Co.,* 129 Colo. 393, 270 P.2d 755 (1954), involving an alleged breach of a contract that contained a termination provision much like that at issue in the case before us, Corbin posited that the termination provision merely limited each party's power of termination for breach. The termination provision *did not,* however, limit either party's ability to sue separately for any breach.

> "[T]he producer had the option between giving the notice just as specified and waiving the breach. But this is not a decision that, without giving a notice of termination, the plaintiff could not maintain an action for damages for a partial breach. It is perfectly clear that the contract did not make it the producer's 'legal duty' to give any notice at all; it merely limited his power to terminate for breach." *Corbin on Contracts,* § 1266 at 65 n. 78.

In *Hubler Rentals, Inc. v. Roadway Exp., Inc.,* 637 F.2d 257 (4th Cir.1981), the court there reasoned as does Corbin in his treatise:

> "[T]he separate concepts of (1) a breach of contract on the part of Hubler, and (2) Roadway's right to terminate the contract by following the ritual of termination prescribed by the contract. We do not think that Roadway's right to assert Hubler's breach of contract to immunize Roadway from damages for its breach depends in any part on whether it had properly terminated the contract. The breach * * * was a breach irrespective of termination. Indeed, the contract itself presupposed the fact of a breach as the premise for termination * * *." *Id.* at 266.

As in *Hubler,* even assuming, arguendo, that McLaughlin had failed properly to terminate the consulting agreement in accordance with the termination provision contained therein, McLaughlin would not be prevented from asserting that Allen had materially breached the consulting agreement prior to McLaughlin's alleged wrongful termination of that agreement. Accordingly, the evidence excluded by the trial justice relating to Allen's performance during the first year of the consulting agreement was both relevant and probative to the issue of

whether Allen had in fact breached the consulting agreement, causing damages to McLaughlin.

Additionally, the introduction of that evidence concerning Allen's alleged deficient performance during the first year of the consulting agreement was also relevant to the issue of whether McLaughlin had in fact waived its right to terminate the agreement, which was the factual dispute at issue in McLaughlin's affirmative defense to the allegations Allen had asserted in his complaint. The question of waiver is a factual issue for the jury to consider and determine and is not one to be resolved by the trial justice as a matter of law. As we said in *Haxton's of Riverside, Inc. v. Windmill Realty, Inc.*, 488 A.2d 723, 725–26 (R.I.1985):

> " '[w]aiver is the voluntary intentional relinquishment of a known right. It results from action or nonaction * * * .' * * * As a general rule, the question of whether a party has voluntarily relinquished a known right is one of fact for a jury."

We additionally said in *Haxton's* that because a factual dispute existed in that case concerning whether waiver had occurred, the trial justice did not err in denying the plaintiff's motion for a directed verdict. *See Violet v. Travelers Express Co.*, 502 A.2d 347, 349 (R.I.1985). *See also Loda v. H.K. Sargeant & Associates, Inc.*, 188 Conn. 69, 448 A.2d 812, 816 (1982); *Hoffman v. Glock*, 20 Md.App. 284, 315 A.2d 551, 555 (Md.1974); *Babcock v. Sol Corp. of Maine*, 118 N.H. 340, 386 A.2d 1259, 1261 (1978).

We discern in the record before us the existence of clear factual disputes concerning Allen's compliance with the terms of his consulting agreement, whether McLaughlin had waived any noncompliance by Allen during the first year of the consulting agreement, and whether McLaughlin through the counterclaim could prove entitlement to damages proximately resulting from Allen's alleged breaches of the consulting agreement. Those disputed factual issues should have been submitted to the trial jury for resolution. The trial justice erred in excluding the proffered evidence noted earlier and in thereafter granting the plaintiffs' motions for a directed verdict.

For all the foregoing reasons, McLaughlin's appeal is sustained, and the judgments entered for the plaintiffs are vacated. The papers in this case are remanded to the Superior Court for a new trial on the initial claim and counterclaim.