DECISION
Before the Court is an appeal by the Warwick School Department (Warwick) from a decision of the Commissioner of Education (Commissioner) denying Warwick's petition for tuition reimbursement based upon a residency determination. Jurisdiction is pursuant to G.L. 1956 §§ 16-64-6 and 42-35-15.
 FACTS/TRAVEL
At all relevant times, David and Sharon T., along with their two children, lived at 50 Governor's Hill Road in the Town of West Warwick.[1] In 1995, after the birth of their second daughter, David and Sharon T. (the T. family) decided to sell the Governor's Hill property and purchase a larger house. Accordingly, in June of 1995, they signed a purchase and sale agreement for a house located at 68 Gillian Avenue in the City of Warwick.
Although Sharon T. was reluctant to start her oldest daughter Abbey in school, since she was only three years old, the workers at the Warwick Early Intervention Program, where Sharon T. was employed, encouraged the T. family to take that step. Although the decision was made to enroll Abbey in school, Sharon T. was uncertain as to what school system Abbey should be enrolled in since the family was living in West Warwick but had signed a purchase and sale agreement for a house located at 68 Gillian Avenue in the City of Warwick. Barbara Turco, who worked at the Early Intervention Program, encouraged Sharon T. to "just come up with a Warwick address, even if it is just temporary until you move to Gillian, because then you won't have to beebop around from school system, start with one and then have to change in three months or two months." Accordingly, since it was the home of an old family friend for whom she acted as a caretaker, Sharon T. decided to use 27 Greenwood Avenue in Warwick as her address.
After a referral on Abbey's behalf was made by Barbara Turco to the Warwick School Department, David and Sharon T. worked with Marie Caswell of the Warwick School Department to develop an Individual Education Program (IEP) for Abbey. An IEP was ultimately developed for Abbey, and it was decided that she should attend the Meeting Street School. From January of 1996 until November of 1996, Abbey was picked up from the house at 27 Greenwood Avenue in the City of Warwick and was transported to the Meeting Street School by the Warwick School Department.
The closing on the property located at 68 Gillian Avenue in Warwick fell through in September of 1995. Despite their efforts, the T. family never purchased property in Warwick. In October of 1997, the T. family sold the Governor's Hill property in West Warwick and moved to Cranston, at which time the City of Cranston assumed the responsibility of paying for Abbey to attend the Meeting Street School.
In December of 1996, Warwick determined that Abbey was not a resident of Warwick and notified both the Meeting Street School and the T. family that it would no longer fund Abbey's education. Between January and June of 1997, Warwick made several requests that the West Warwick School Department (West Warwick) provide reimbursement for the cost of educating Abbey between January and November 1996.
After West Warwick failed to honor its requests for reimbursement, Warwick filed a petition with the Commissioner seeking reimbursement for the costs it incurred to educate Abbey while she was a resident of West Warwick. A hearing was held at the Department of Education on February 25, 1998. In support of its petition, Warwick presented two witnesses: Robert Dooley, the Director of Administration, and Steve O'Haire, the Transportation Manager of the Warwick Public Schools. On behalf of West Warwick, Sharon T. testified about the events leading to Abbey's enrollment at the Meeting Street School.
On July 19, 1999, the Commissioner issued a decision denying Warwick's petition. In his decision, the Commissioner found that " . . . West Warwick was never asked to provide education to Abbey. Instead, the servants and employees of the Warwick public schools gave the T's the right to enroll in the school of Warwick before the T's had become residents of Warwick for school purposes." Decision at 4. Accordingly, the Commissioner found that, under the circumstances, there was no reason to hold West Warwick liable since Warwick waived the residency requirement and voluntarily enrolled Abbey in its school system.
On August 12, 1999, Warwick filed a timely appeal of the Commissioner's decision to this Court. On appeal, Warwick requests that this Court reverse the Commissioner's decision and order that $31,397 be withheld from State aid to the West Warwick School Department for special education services and reassigned to the Warwick School Department together with costs, attorneys' fees and other relief as this Court deems appropriate.
 STANDARD OF REVIEW
This Court's review of a decision of the Commissioner of Education is controlled by G.L. § 42-35-15(g), which provides for review of a contested agency decision:
"(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commissioner's decision. Newport Shipyard v. Rhode Island Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v. George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458. When more than one inference may be drawn from the record evidence, the Superior Court is precluded from substituting its judgment for that of the agency and must affirm the agency's decision unless the agency's findings in support of its decision are completely bereft of any competent evidentiary support. Rocha v. State Public Utilities Comm'n, 694 A.2d 722, 726 (R.I. 1997).
 THE TESTIMONY OF SHARON T.
In this case, after Warwick filed the appropriate petition, the Commissioner conducted a hearing on February 25, 1998. At the hearing, Warwick objected to efforts to elicit Sharon T.'s opinion regarding what the Warwick School Department knew about the status of Abbey's residency at the time she enrolled in the Warwick School System. The Commissioner overruled Warwick's objection.
As a preliminary matter, Warwick now argues that the Commissioner's ruling constituted an error of law since Sharon T. lacked the requisite knowledge to testify as to what Warwick knew in regards to Abbey's residency. Specifically, Warwick contends that the Commissioner's ruling was in violation of Rule 602 of the Rhode Island Rules of Evidence which states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."
Generally, an administrative proceeding is not as rigid in the presentation of evidence or in its procedure as would be expected in a criminal trial. For example, "[t]he courts of the United States, both federal and state, have long held that certain types of hearsay evidence are admissible in administrative proceedings." Craig v. Pare, 497 A.2d 316 (R.I. 1985). At the hearing before the Commissioner, Sharon T. did not testify as to what she believed Warwick knew concerning Abbey's residence. Rather, she testified, based upon her personal knowledge, about the representations she had made to Marie Caswell and as to the fact that she had informed Ms. Caswell that the T. family lived in West Warwick and were attempting to move to Warwick. Accordingly, this Court finds that the Commissioner did not err in permitting Sharon T.'s testimony since she only testified as to what she told Marie Caswell and did not speculate as to what the Warwick School Department knew.
 WAIVER UNDER RHODE ISLAND GENERAL LAWS § 16-64-2
Generally, a child shall be enrolled in the school system of the town wherein he or she resides. See G.L. 1956 § 16-64-1. "A child shall be eligible to receive education from the town in which the child's residence has been established until his or her residence has been established in another town and that town has enrolled the child within its school system . . . ." See G.L. 1956 § 16-64-2. However, § 16-4-2 further provides that "[n]othing contained herein shall be construed to prohibit a town in its own discretion from enrolling a child within its school system before a child has established technical residency within the town."
Whenever a particular school district disputes the residency of a child, it may file a petition to adjudicate the child's residence with the State Commissioner of Elementary and Secondary Education. Then, the Commissioner is required to give notice to all interested parties, conduct a hearing on the petition, and issue a final order. See G.L. 1956 § 16-64-6.
Warwick contends that the Commissioner's finding that it gave Abbey the right to enroll in its school system before the T. family had become residents of Warwick for school purposes was clearly erroneous in view of the reliable, probative and substantial evidence of record. Specifically, Warwick contends that the record does not support this conclusion since the only reliable evidence in the record indicates that Warwick had no knowledge that the T. family did not reside in Warwick at the time that they enrolled Abbey in the Warwick School System.
It is a well-recognized principle of this Court to accord deference to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency. See Pawtucket Power Assoc. Ltd. Partner. v. City of Pawtucket, 622 A.2d 452, 456 (R.I. 1993). Deference is accorded even when the agency's interpretation is not the only permissible interpretation that could be applied. Id. at 456-57. The deference afforded by this Court to the factual findings of the hearing officer is especially important in matters involving technical procedures and specialized knowledge. Robert E. Derecktor of Rhode Island Inc. v. U.S., 762 F. Supp. 1019 (D.R.I. 1991).
At the hearing, the Commissioner heard testimony from Sharon T that throughout the transition process of trying to get Abbey into school, she informed all involved that the family owned property in West Warwick and were trying to buy a house in Warwick. Specifically, Sharon T. testified that she had informed Marie Caswell of the Warwick School Department, that the T. family owned property in West Warwick and that it was only temporary since they were trying to buy a house in Warwick. Sharon T. further testified that at the time Abbey's IEP was signed, it was her belief that Marie Caswell was aware that the T. family were still in the process of trying to buy a house in Warwick. The Commissioner also heard testimony that when Marie Caswell signed Abbey's IEP, which led to Abbey's placement in the Meeting Street School, she was acting as a representative of the Warwick School Department and the designee of the Special Education Director.
After listening to the testimony and reviewing the language of § 16-64-2, the Commissioner found that, at all relevant times, David and Sharon T. were residents of West Warwick and that Warwick had knowledge of that fact, but chose to allow Abbey to enroll in the Warwick School System. The question of whether Warwick waived the residency requirement is a question of fact. See Hoffman v. McLaughlin Corp., 703 A.2d 1107, 1113 (R.I. 1997) (finding that question of waiver, here with respect to the right to terminate a contract, was factual). This Court will "reverse factual conclusions of administrative agencies only when they are completely bereft of competent evidentiary support in the record." See Sartor v. Coastal Resources Mgmt. Council,542 A.2d 1077, 1083 (R.I. 1988). After a review of the record, this Court finds that the foregoing evidence substantially supports the Commissioner's factual finding that Warwick waived the requirement that Abbey be a resident of the City of Warwick before she was eligible to enroll in the Warwick School System.
 APPLICABILITY OF RHODE ISLAND GENERAL LAWS § 16-64-2
Warwick further argues that the Commissioner erred in finding that the Warwick School System voluntarily accepted Abbey within its school system, pursuant to G.L. 1956 § 16-64-2, before she established residency in Warwick. Specifically, Warwick contends that David and Sharon T. are not entitled to the protection of G.L. 1956 § 16-64-2 since "the Commissioner had held that a child who has not established school residence within a town, i.e. whose parents misrepresent the child's or parent's residence at the time of enrollment, received no protection from Section 16-64-2.'" See In re: Residency of John C.O. Doe, November 26, 1997, at 7. According to Warwick, the evidence is uncontroverted that Sharon T. made representations to a representative of the Warwick School Department and the designee of the Special Education Director that Abbey's residence was 27 Greenwood Avenue at the time of enrollment, when she had full knowledge that Abbey did not live at that address.
This Court finds that the Commissioner did not err in finding that G.L. 1956 § 16-64-2 was applicable in the instant matter. Unlike the situation referenced in Doe, where a parent intentionally misrepresents his/her residence, Sharon T. informed all involved that they did not live at 27 Greenwood Avenue despite the fact that it was listed on Abbey's IEP. The Commissioner heard testimony from Sharon T. that she informed Marie Caswell that they owned a house in West Warwick and were attempting to purchase in Warwick. Sharon T. testified that they sought to enroll Abbey in the Warwick School System because they honestly intended to purchase property in Warwick. Accordingly, the Commissioner's finding that G.L. 1956 § 16-64-2 did not exclude Abbey from its protection did not constitute an error of law.
 THE COMMISSIONER'S DECISION
Warwick contends that the Commissioner erred in finding that West Warwick never had any obligation to fund Abbey's education because Abbey never sought admission to the West Warwick School System. According to Warwick, that determination clearly contradicts the language of the residency statute, which provides that "a child shall be enrolled in the school system of the town in which he or she resides."
This Court finds that the Commissioner's finding that West Warwick did not have any obligation to fund Abbey's education was not clearly erroneous in view of the evidence of record. Although this Court does not dispute Warwick's contention that, at all relevant times, Abbey was a resident of West Warwick, the record evidence substantially supports the Commissioner's finding that Warwick waived the residency requirement and voluntarily enrolled Abbey within its school system before she was a resident.
In his decision, the Commissioner recognized that it was "clear that West Warwick would have been responsible for educating [Abbey] if [she] had ever sought admission to the West Warwick public school system." Decision at 4. However, the Commissioner further stated that "[t]he problem is that West Warwick was never asked to provide education to Abbey . . . [rather,] . . . the employees of the Warwick public schools gave the T.'s the right to enroll in the school of Warwick before the T.'s had become residents of Warwick for school purposes." Id. Having found that Warwick waived the residency requirement and voluntarily enrolled Abbey within its school system, the Commissioner determined that West Warwick was not liable for the cost of educating Abbey. This Court agrees.
After review of the entire record, this Court finds that the decision of the Commissioner is supported by the reliable, probative and substantial evidence on the whole record, not affected by error of law, and not in excess of the statutory authority of the agency. Substantial rights of the Warwick School Department have not been prejudiced. Accordingly, the decision of the Commissioner is affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] The T. family purchased the property at 50 Governor's Hill Road in September of 1991 and resided there until they moved to the City of Cranston in October of 1997.